JUDGE WILLIAMS
delivered the opinion op the court:
After much labor and diligent search through this voluminous record, the whole controversy may be resolved into two main questions. Numerous creditors of G. J. Salter sued out attachments against him, in the latter part of the year 1861 and first of 1862, mainly upon the grounds of his concealment and voluntary absence from the county of his residence, and being within the military lines of the “Confederacy” for more than thirty days previous thereto. Warning orders against him were made, and an attorney to defend appointed. When, after the suits had progressed near two years, various steps taken, and some irregularities committed, a judgment of sale was had and a commissioner to execute it was appointed, who made a sale under the judgment.
*317 There being a contest among the creditors as to priority, growing out of the supposed irregularity and illegality of some of the first attachments, a judgment was subsequently rendered, which gave priority to subsequent over previous attachments. From this judgment the dissatisfied creditors prosecuted an appeal to this court, when, at its June term, 1864, Salter appeared by counsel and prosecuted a cross-appeal, seeking a reversal of both the judgment of sale and that sustaining the attachments. This court, on said appeal and cross-appeal, adjudicated as to both. (See Opinion, 1 Duvall, 342.)
As was said by this court in Payne vs. Witherspoon (14 B. Mon., 272), Gill vs. Johnson (1 Met., 649), Allen vs. Brown (4 Met., 342), a defendant constructively summoned may prosecute an appeal and have the.judgment reversed for errors apparent in the record, and this will be an “appearance.” But if he wishes to reopen and retry the case because the judgment was unjustly obtained, and wishes to introduce additional proof, he must proceed under section 445, Civil Code, in the court which rendered the judgment, to reopen the cause.
Having his election whether to appear and prosecute an appeal, or to proceed in the court which rendered the judgment to reopen and retry the cause, and having chosen to proceed by appeal, he is precluded by the adjudication thereon as much as though originally served with process, because the privilege to reopen and retry is only secured to defendants “ constructively summoned and who did not appear.” Appearance in this court precluded him, as much as if it had been in the lower court, proceeding under said section 445.
By his appeal, Salter voluntarily appeared in the causes and became a party, with actual notice; and, having' elected to risk his case on the record as it was *318 then presented, he precluded himself from making a different presentation under said section 445.
. Had there been no judgment of this court on the validity of the attachments, then the case would have had a different aspect; but this court then adjudicated the validity of the attachments and the priorities, as between the various creditors. So it was an adjudicated case, both as between Salter and his creditors and as between themselves, and all future efforts in the court below to disturb this adjudication was properly held by. the court unavailing, both as to Salter and his creditors. .
Salter offered no defense to the actions, only to the causes of attachment, and these having been adjudicated, distinguishes this case from all the cases referred to by counsel. There then being no personal judgment, he of course could have contested the right of recovery when the causes were returned to the court below; but this he did not offer to do; and the only question he then proposed to litigate had been closed by adjudication, and this was likewise an adjudication as between his creditors.
The first judgment of sale was rendered February 20th, 1863, directing the time it should be advertised,’ and where to be made, the purchase price to be in two equal installments, to be due August 20th, 1863, and February 20th, 1864.
The commissioner having reported the causes why he had not made the sale, a supplemental judgment was rendered June 26th, 1863, directing him to execute the original judgment according to its directions.
It was impossible, under this judgment, that the first installment should be on three months’ time, and this is the judgment of sale referred to in the former opinion of this court, as is apparent from the expression therein, *319 “ the judgment iloes not conform to the law regulating the sales of real estate.”
The next main question is as to the rights of the purchasers to hold the land, notwithstanding the judgment of sale had been reversed by this court, for the very substantial reason that it did not conform to the law as contained in sections 253 and 405, Civil Code.
The first payment was on less than a month’s time, and the other less than seven months; whereas, we regard the true construction of said sections to be, that no part of the purchase price of land shall be on less time than three months, with a discretion in the court to make it twelve months, or in installments equivalent thereto; but there is no discretion given the court to sell on installments equivalent to three months, by making some shorter and the others longer. We therefore adhere to the former opinion as to this.
The purchasers, Dunn and Hopper, were plaintiffs in attachments, and parties to both the judgment and appeal.
The purchaser, Sami. Lusk, was an attorney for Hall Anderson, the largest attaching creditor; his name not only appears to Anderson’s suits, but Dunlap proves that he was one of Anderson’s attorneys.
The conveyance of Lusk to his minor children, in consideration of natural love and affection, does not make them Iona fide purchasers; but they must.be regarded as volunteers, subject to all the equities available against their vendor. In the case of Miller vs. Hall and wife, we have at the present term given this question of judicial sales much consideration.
We regard it as the well-settled doctrine in this and our sister States, that an attorney in a case is privy to his client, and as much bound, if not indeed more, to take *320 notice of all the errors, as the client; and where he becomes a purchaser at a judicial sale, made for the benefit of the client, every error and equity which would avail against him had he been the purchaser, growing out of the errors and irregularities of the record, would affect the attorney’s purchase.
By section 448, Civil Code, it is provided, that “ the title of purchasers in good faith, to any property sold under attachments or judgments, shall not be affected by the new trial permitted by section 445, except the title of property obtained by the plaintiff and not bought of him in good faith by others.”
The latter clause of this section most clearly indicates the legislative intent, that the title of the plaintiff, who may become a purchaser under such proceedings, shall be subject to defeat by the reopening and retrial of the cause as provided in section 445, unless he shall have conveyed the title to some bona fide purchaser from him.
The judgment, therefore, setting aside the sale and conveyance to those who were parties, and to Lusk who was an attorney and privy to one of the parties, is correct.
If a reversal of the judgment, on a retrial of the case in the court which rendered it, could affect the purchaser’s title, it is not perceived why a reversal of the judgment on appeal shall not also affect it. So decided by this court in Jackson vs. Speed, 2 Duvall, 426.
The banks do not prosecute an appeal from that part of the judgment directing them to return that portion of the purchase money of the land, the sales of which are set aside, which they respectively received ; but the Bank of Kentucky insists, that as Hall Anderson prosecuted the suit as surety to have the money paid it as Salter’s creditor, that it has a right to be heard on his behalf. However this may be, we think the bank stands on no *321 more favorable grounds than those who prosecuted the suits for their benefit would, had the money been paid to them, and are in no better condition than they would have been had they brought and prosecuted the suits in their own names. They were parties, and the suits were prosecuted for their benefit.
The judgment was erroneous, the sale erroneous, and because of the reversal of the judgment and setting aside of the sale, they have obtained money from the purchasers to which they are not entitled. The principles of this-case differ from an execution creditor, where the officer has levied on property not subject to the execution, sold it, collected the money, and returned the execution satis-, fied. In such case there is no warranty by the plaintiff. But in case of Bowman vs. Milton, this court held, where a mortgagee obtained a judgment of foreclosure and sale of the mortgaged property, and it was afterwards ascertained that the mortgagor did not own the property, and the purchaser lost it, that the mortgagee was bound to refund the money to the purchaser. In such cases the property is sold at the instance and by the procurement of the plaintiff and by his proceedings for that specific purpose, which is not the case under execution, when the levy and sale is the act of the officer of the law.
Besides the bond required by subsection 2, sec. 140, Civil Code, to be given by an attaching creditor before the sale of defendant’s property shall be adjudged on a constructive service of process, does not secure to the purchaser a return of the money, in case his purchase and conveyance should be set aside; it is therefore the more essential that the courts should protect the purchasers at their sale when the sale is annulled.
*322 It was not only proper, therefore, that the court, in ordering a resale, should give the purchasers priority over all the parties, but also require those to whom the money had been wrongfully paid to refund it, especially as it will be in the power of the court to do ample justice between the parties, and can cancel any credit wrongfully given on the debtor’s obligation by reason of such payments.
Wherefore, the judgment on Salter’s appeal vs. Dunn, et. al., is affirmed.
And on the appeal of Lusk and Gill vs. Salter, it is affirmed as to all the parties but Gill, and reversed as to him, with directions to dismiss absolutely all proceedings against him.
Judge Robertson did not sit in this case.