THE FLORIDA CENTRAL RAILROAD COMPANY, APPELLANT, vs. H. BISBEE, JR., APPELLEE.

1. What is done under a decree is valid so far as third persons are concerned, notwithstanding the subsequent reversal of the decree. Where moneys collected under such decrees are applied by order of court to a debt of plaintiff to a third person, there is no remedy against such third person upon a subsequent reversal of the decree.

2. Where a receiver has moneys sequestered by him under a decree finding such moneys applicable to plaintiff's demand, and a portion of such moneys is applied by order of court to the payment of the claim of plaintiff's attorney against the plaintiff for his services in the suit, a subsequent reversal of the decree and of the order directing payment to the attorney of his claim against plaintiff, there being no supersedeas when the money was applied, gives the defendant no claim against the attorney.

3. A defence upon equitable grounds, which sets up as the substantial equity a defence at law, such defence at law having been already interposed by plea (such plea being a good plea,) should be disallowed.

Appeal from the Circuit Court for Duval county.
The facts are stated in the opinion.

*James M. Baker* and *John T. Walker* for Appellant.

*H. Bisbee, Jr.*, in *pro. per.*

MR. JUSTICE WESTCOTT delivered the opinion of the court.

This is an action of *indebitatus assumpsit* to recover money paid upon a judgment or order subsequently reversed upon appeal. The plaintiff in its declaration avers: That the defendant on the 27th day of July, A. D. 1876, procured an order from the Circuit Court for the Fourth Judicial Circuit to Joseph H. Durkee, then master in charge and possession of the Florida Central Railroad, under and by virtue of a decree in the suit of the State of Florida vs. the plaintiff and others, ordering the said Joseph H. Durkee, as such master and receiver, to pay to the said defendant the sum of six thousand dollars on account of fees claimed to be due the defendant for services as solicitor in said cause, upon which said order the said Durkee, as such master and receiver of the moneys of the said company, did then and there pay to the defendant three thousand dollars; and the said plaintiff, being aggrieved by said order, appealed therefrom to the Supreme Court of the State of Florida, which appeal coming on to be heard the said Supreme Court set aside and reversed said order to pay said amount of six thousand dollars to the defendant, whereupon a right accrued to the plaintiff to institute suit against the defendant to recover the amount of three thousand dollars, whereupon

the defendant became liable to pay the said sum, with interest, &c. Then follows a count for money had and received by the defendant for the use of the plaintiff. To this declaration there was a demurrer, but we do not see that any action was taken upon it.

The defendant filed several pleas. We examine them in their order. The first was substantially: That in June, A. D. 1870, as authorized by the provisions of several acts of the Legislature of Florida, the State of Florida issued and delivered to the Jacksonville, Pensacola and Mobile Railroad Company four thousand bonds of the State of Florida, of the denomination of one thousand dollars each, receiving from said company three thousand bonds of that company, and one thousand bonds of the Florida Central Railroad Company of one thousand dollars each, bearing eight per cent. interest, in exchange for the said State bonds; that the J., P. & M. Railroad Company sold a greater part of said bonds; that on the 20th day of March, A. D. 1872, the State brought a suit in the Circuit Court for Duval county against the said J., P. & M. R. R. Company, *et al.*; that afterwards, on June 22, 1872, by means of an amended complaint, the plaintiff in this cause, the Florida Central Railroad Company, was made a defendant; that said company denied its power to issue its said bonds, or that said bonds were a lien upon its property; that the State prosecuted this action to enforce the lien upon its property authorized by the laws, named as security for the payment of its bonds, as well as against the J., P. & M. R. R. Company, to enforce a like lien; that a judgment was obtained in said suit against the said J., P. & M. R. R. Company for six hundred thousand dollars interest accrued on its bonds, and that a judgment was recovered on the 18th November, A. D. 1875, against the plaintiff for the sum of three hundred and sixty-eight thousand dollars on

account of interest due on its bonds, which said judgment against the plaintiff ordered Joseph H. Durkee, as a master of this court, to take possession of the railroad and property of plaintiff, and to sell the same at public auction for cash, and make report thereof, and that said judgment is the decree mentioned in the plaintiff's declaration, under which the said Joseph H. Durkee, as master, acquired and held the said railroad property ; that pursuant to the directions of said judgment said master acquired and held the said railroad property of the plaintiff, receiving the net incomes and profits arising from its operation, which said moneys, by the terms of the said judgment, the said master was required to deposit in the First National Bank of Florida, and which could only be paid out upon an order of this court, directed to said master, according to the terms of said judgment ; that said master executed a bond (a description is here given of it which is not essential) ; that the said judgment also provided that the plaintiff should be entitled to a credit on said judgment for all moneys that should come into the hands of said master while in possession of said railroad ; that on the 27th of July, A. D. 1876, the master being then in possession of said railroad, under said final judgment, which was then in full force, the State of Florida, then as trustee, prosecuting said suit against the plaintiff for the benefit of the holders of said State bonds and the trust estate, was indebted to defendant for service rendered as its agent, solicitor and attorney in said suit against the plaintiff; that the moneys then in the hands of the said master, deposited in the bank named, arising from said road while in the possession of said master, being moneys applicable to the payment of said judgment, and a trust fund for the benefit of said bondholders, for whose use and benefit the said suit was prosecuted, the said master, upon the order of said court, duly made and with the consent,

sanction and approval of the State, through its Governor, did pay to this defendant, about the 27th of July, A. D. 1876, the sum of three thousand dollars in check drawn by him upon said bank, in favor of this defendant, and the said sum was passed to the credit of the State of Florida for defendant's said services; and afterwards, about the 22d day of December, A. D. 1876, the State of Florida, as such trustee, through its Governor, and this defendant, had a full and final settlement for defendant's services as agent and solicitor, for services rendered in said suits and in other suits, and in this settlement the State of Florida and said trust estate received and obtained credit for the three thousand dollars, and the said State, the client of defendant, was discharged therefrom.

To this and the other pleas which we notice hereafter there was a demurrer.

The questions discussed upon the demurrer to this plea arise more from a difference in its construction than from a conflict in opinion as to what is the law applicable to the facts when ascertained.

We think the plea, construed with reference to the declaration, presents this case: that the defendant, representing the State of Florida as attorney and solicitor, recovered, on the 18th of November, 1875, a judgment against the plaintiff corporation for the sum of three hundred and sixty-eight thousand dollars, on account of interest due on bonds of the plaintiff corporation held by the State; that under this judgment a master was directed to take possession of the property of the plaintiff, to sell the same, and to receive the incomes from its management; that the judgment provided that the plaintiff should be entitled to a credit for all moneys that should come to the hands of the master; that on the 27th of July, A. D. 1876, the master, having funds then in his possession realized by the management of

plaintiff's property under said judgment, the said judgment being in full force and effect, paid the defendant the sum of three thousand dollars upon the order of the court duly made and with the consent, sanction and approval of the State; that the said sum was passed to the credit of the State of Florida for defendant's said services as attorney and counsellor; and that upon a full and final settlement afterwards had between the defendant and the State, the defendant gave the State of Florida credit for this money thus paid. Subsequently, upon an appeal, both the judgment and the order were reversed.

The question here is, can the plaintiff corporation, under these circumstances, recover this money thus paid defendant for services as attorney and counsellor anterior to the reversal of the judgment and order? In contemplation of law, the moneys in the hands of the master at the time they were paid were moneys applicable to the payment of the judgment in favor of the State, the judgment being then in full operation, and the attorney and counsellor had a lien upon them for the amount of his claim for services in favor of the judgment plaintiff. The judgment being in force, this application of the funds was legal under the then existing circumstances. It was an application of money which might be properly appropriated to the payment of the sum due the judgment plaintiff, to the debt of such judgment plaintiff, in such manner as upon a reversal of the judgment the remedy of the plaintiff corporation here, if there was any, was by a writ of restitution against the plaintiff in the original suit, with or without a *scire facias*, as the case may be, and not an action of *indebitatus assumpsit* against the attorney to whose claim for services it had been legally applied before that time. The judgment plaintiff has applied money adjudged at the time to be applicable to the payment of her own claim to the payment of an un-

disputed debt due by her. The defendant in judgment must look to her, and not to her creditors. It will not be denied, upon the reversal of this judgment, that the Florida Central Railroad Company had a right to restitution as against the party plaintiff in the judgment. If this be so, it certainly must be evident that this corporation cannot recover as against the attorney. She cannot have a subsisting right of action against the party and against her attorney and agent at the same time.

The Supreme Court of the United States, speaking of this subject, says, (6 Pet., 8): "The reversal of the judgment gives a *new right* or cause of action against the parties to the judgment, and creates a legal obligation on their part to restore what the other party has lost by reason of the erroneous judgment; and as between the parties to the judgment, there is all the privity necessary to sustain and enforce such right, but as to strangers there is no such privity."

The presumption from this record, upon the face of the declaration and this plea, is that the proper method was adopted to have this debt of the State of Florida for services of her attorney and counsellor paid from the funds in the hands of the master and applicable to the claim of the State. The rule upon this subject in chancery is that " when a fund coming to his client is in court, the solicitor may present a petition for the taxation of his bill and for payment of it out of the fund." Dan'l Chy. Prac. and Pleadg., 5 Edition, 1845.

According to the authorities defining with accuracy this proceeding and a suit in equity, there is such a difference between them that there may be an application of moneys by such proceeding in the pending suit and yet not a recovery in a bill for an account. 9 Sim., 583, 588.

While in the time of Lord Hardwicke the rule may have

been otherwise, as counsellors could not then maintain an action for fees, the rule in this State, and in most of the States of the Union, is that upon such funds in the registry of the court the attorney for the plaintiff has a lien for a reasonable compensation for his services in obtaining such judgment or decree. 6 Fla., 258 ; 10 Wall., 493, 494 ; 14 Ga., 105.

The application of the funds here was legal and according to the judgment and order, which had not been superseded. These positions are clear, and we see no other question in the case except the one of privity. Was the defendant here such a stranger to the decree or judgment as prevents the existence of such privity between him and the plaintiff as is necessary to maintain this action of *indebitatus assumpsit?* We think no such privity exists or existed. His claim was in no way any part of the foundation of the judgment against the Florida Central Railroad Company, nor did he, under the averments of the plea, make any claim against that company.

He was paid from money in *gremio legis* applicable to a judgment and decree between his client and the plaintiff here.

No question between the parties to this suit not already determined was necessary to be considered in the hearing of his petition seeking payment out of these funds. The action of the court simply sanctioned and directed an appropriation of funds applicable to the claim of his debtor to him her creditor. The attorney of the State did not assume any other or new relation to the Florida Central Railroad Company than he had occupied before. He claimed, as attorney of the State, by virtue of a claim against the State, and while it is true that this act as attorney of the State was to enure to his own benefit, still this benefit resulted directly and solely from his relation to the State, and

indirectly through the relations of the State to the Florida Central Railroad Company. He made no direct claim against the Florida Central Railroad Company. And in view of the language of the Supreme Court of the United States referred to, any act resulting from the relations of the parties to the suit, which was justified by the judicial proceeding in its then present status erroneous though it may have been afterwards determined to be, as between the parties, must be sustained as to third persons.

A supersedeas is necessary to prevent such action. That would have stopped any proceeding of the court or its officers under the decree. If there is no supersedeas, then action of the court, in accordance with the decree, if the decree be afterwards reversed, can only be remedied by proceeding against the parties.

These conclusions are sustained by the principles announced in the following cases: 3 N. Y., 329; 20 N. Y., 306; 6 Pet., 15 to 19; 14 Ga., 89; 10 Wall., 494; 2 Mon., 972; 28 N. Y., 237; 18 N. Y., 371.

The other pleas are pleas on equitable grounds under the sixty-ninth section of Chapter 1096, Laws, being an act to amend the pleading and practice in the courts of this State. A plea under this statute is applicable only to a case at law in which, if judgment were obtained against the defendant, he would be entitled to relief on equitable grounds. Day's Com. Law Procedure, 328, and cases cited. It is obvious that all such equitable pleas have vitality and effect according to the case made at law. To be effective not only must a case at law be made against the defendant, but an equity which would be operative to give title to relief against the particular judgment to be given in that case must be disclosed by the plea.

The first plea here on equitable grounds recites first the facts set up in the plea just disposed of, and that the plain-

tiff can obtain credit for this sum in a suit alleged to be pending between it and the *cestui que trusts* of the State. We have seen that these facts are a sufficient reply to the case made by the declaration admitting that it makes a case, and it follows, therefore, that looking at the entire pleading no case for an equitable defence exists. If the facts here pleaded are available, they are available at law.

Whether the plaintiff here is entitled to credit upon the decree in the case of J. F. Schutte and others against it for this three thousand dollars, or whether the State, as trustee, would be entitled to a credit for that sum in its account with the *cestui que trust* as an amount disbursed by her in the management of the trust, are questions which in our judgment have no place here, as they are questions with which the defendant here has no concern as equitable defences, except in the event of his liability to judgment at law.

The third plea on equitable grounds recites substantially the matter of the first plea, and proposes to set off a debt due by the plaintiff to the State, as trustee, against the three thousand dollars claimed to be due it by the defendant, the agent and attorney of the trustee. What has been said of the second plea in principle disposes of this plea. The first plea being, in our opinion, a good defence, the judgment, to the extent that it overrules the demurrer, must be affirmed. The plaintiff, however, upon remanding the case may, under the practice in this State, have leave to reply to the plea upon showing a meritorious replication, to be filed in twenty days after the filing of the mandate of this court in the Circuit Court, in which case the court may set aside the final judgment upon the demurrer, and proceed in the case according to law, otherwise the final judgment to stand affirmed.

Judgment affirmed with qualification stated.

NOTE.—Section 27 of the act of November 23, 1828, provides: " That no demurrer, either at law or in equity, shall be considered as an admission of the facts set forth in the pleadings referred to so as to bar the person demurring from any substantial claim or defence which he might have urged if said demurrer had not been filed." Thomp. Dig., 331.

VanValkenburgh, J., did not sit in this case.