CASE 101—ACTION OF SUPERSEDEAS BOND—JUNE 19.

| 108 | 759 |
|-----|-----|
| f133 | 779 |

# Cavanaugh v. Wilson.

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. REVERSED.

APPEAL—REVERSAL OF JUDGMENT—RESTITUTION BY PURCHASER AT EX-
ECUTION SALE—PURCHASE BY ATTORNEY.

Held:   1. Where a judgment was reversed on the ground that de-
fendant owed no part of the debt for which it was rendered, the
attorney for plaintiff, having purchased defendant's land at a.
sale made under an execution which issued upon the judgment,
must, though he obtained a good title to the land, either restore
the land or account for its value, not being entitled to be protect-
ed as a stranger; but he is entitled to the purchase money which
he paid out, less the rents and profits he has received.

2. Though a judgment awarding to the purchaser the possession of
the land was affirmed on appeal after the judgment on which the
execution issued was reversed, yet as that fact did not appear,
and could not have appeared, in the record, that judgment is·
not conclusive as to the purchaser's right to possession, and he·
is not entitled in an action on the *supersedeas* bond executed upon
that appeal to recover the rents of the property pending the ap-
peal, the reversal of the judgment on which the execution issued.
being made to appear.

H. M. LANE FOR APPELLANT.

BURTON VANCE FOR APPELLEE.

(No briefs in record.)

OPINION OF THE COURT BY CHIEF JUSTICE HAZELRIGG—REVERSING.·

In March, 1888, Riley and others obtained judgment
in the Louisville chancery' court against Catherine Cav--
anaugh, the present appellant, for something less than
$2,000. From this judgment she prosecuted an appeal to·
th's court without *supersedeas*, and on June 4, 1892, this.

·court reversed the judgment, deciding that appellant, Cavanaugh, did not owe any part of the judgment rendered. Cavanaugh v. Riley, 19 S. W., 745. When the case went back it was dismissed as against appellant, pursuant to the opinion and mandate of this court. But in the meantime, to-wit, in April, 1889, certain real estate of Mrs. Cavanaugh had been sold under executions on the judgment of March, 1888, and bought by appellee, Willson, at the price of $2,213, the amount of the execution debts, interest, and costs. Willson was the attorney of Riley and others in the suits against Mrs. Cavanaugh under a contract securing to himself a fee equal to one-fourth of the amount received, and he appears also to have bought up the claim of the execution creditors, and to have thus paid off the purchase price of the property. In January, 1891, he obtained a deed for the property from the sheriff; and thereupon, on a motion of the chancery court, he obtained on April 13, 1891, judgment for possession. From the order awarding possession, Mrs. Cavanaugh prosecuted an appeal to this court. On this appeal this court said: "As this record now appears to us, the various judgments were valid, unsatisfied, and unreversed, and, as the plaintiffs appear to have been entitled to the executions that issued, the sale was regularly made, and the deed properly executed, the lower court was bound to adjudge the purchaser, Willson, entitled to the writ of possession." The judgment for possession may accordingly be affirmed. Cavanaugh v. Willson, 35 S. W., 918. It may be noted here that while this appeal was disposed of after the reversal in this court ·of the judgment of March, 1888, that fact did not appear in the record, and could not, because the judgment for possession appealed from was rendered a year and some months before the reversal of the March, 1888, judgment.

This fact appears in the opinion, because it is, in substance,. recited that the judgments in favor of Riley and others on which the executions issued, and under which the sale of Mrs. Cavanaugh's property was made, were, so far as the record disclosed, valid, unsatisfied, and unreversed. When Mrs. Cavanaugh appealed from the judgment in Willson's favor, for the possession of the property, in April, 1891, she executed a *supersedeas* bond, with certain sureties, by means of which she kept the purchaser out of the possession awarded to him from April 13, 1891, until May 10, 1896, to his damage, as it appears from the proof, in the sum of about $3,500. After the affirmance, therefore, of the judgment for possession, in May, 1896, appellee, Willson, brought the present suit against Mrs. Cavanaugh and her sureties on the *supersedeas* bond for the damages secured by the covenants of the bond. For answer and counter-claim, Mrs. Cavanaugh set up in detail what we have above stated briefly, and contended that by reason of the reversal of the judgment under which her property was sold, and the decision of the court of last resort, in substance, that her property had been sold to pay, not her own but other parties' debts, she was, as against the plaintiffs in the executions and their attorney and privy, Willson, entitled to a restitution of the value of her property in the way of damages, and that value she avers was $16,000, for which she prayed judgment. By consent, the law and facts were submitted to the court, and, upon hearing, the claim for restitution and damages was rejected,. and judgment rendered for Willson for the sum of $3,053, with interest from December, 1897.

We have, then, this rather startling situation discovered by this litigation: Mrs. Cavanaugh was the owner of certain residence and business property of the value, ac-

cording to the court below, of $10,000, or, according to her estimate, of the value of $16,000. This property is taken to pay debts for which she is in no way responsible, but which, at most, amount only to $2,200, and in addition she is made to account in money for rents on the property to the extent of some $3,000, accruing in large measure after it had been finally determined that her property had been sold to pay debts she did not owe. And it is particularly to be noted that the groundwork on which has been erected this entire superstructure of wrong is the unconscionable transaction by which property of the value of some $10,000 was sold for $2,213.

At the outset it is important to notice briefly the grounds on which the learned judge, who enters an elaborate opinion, has refused every relief to appellant. After reciting that "it is admitted Mrs. Cavanaugh was not liable in any way, nor was her property, for the debt or claim asserted in the action in which her property was seized and sold," the learned judge said: "In subsequent proceedings between the plaintiff in this action [Willson] and the defendant [Mrs. Cavanaugh] the court of appeals held that the plaintiff [Willson] acquired at said sale a good title against Cavanaugh to said property, notwithsanding the judgment against Cavanaugh, under which her property had been sold by the sheriff and purchased by Willson, was erroneous, and subsequently reversed." This language apparently indicates that the court held on the appeal of the suit by Willson for possession that, notwithstanding the judgment under which the property was sold was erroneous and subsequently reversed, still Willson obtained a good title; whereas, we had seen, the only thing determined on that appeal was that as the record there before the court disclosed a valid and unreversed judgment, un-

der which, on execution, the defendant's property was sold
and bought by the plaintiff, the latter was entitled to pos-
session.   No question of title was involved, but, if it had
been, still the correctness of the judgment of possession
appealed from would probably have been upheld, because
the judgment on which the execution issued, so far as that
record disclosed at that time, was valid and unreversed.
The case is not authority on the question of what rights
Mrs. Cavanaugh may have on a record disclosing that the
judgment under which her property was sold was valid,
erroneous, and for that reason had been reversed and set
aside.   The case of Yocum v. Foreman, 14 Bush, 494, is
also relied on to support the finding below.   That case
established the doctrine that, whether the purchaser at an
execution sale be the plaintiff in the execution or a strang-
er, the title passes.   This seems to be in accordance with
the general rule, when not controlled by statute.   But this
doctrine leaves untouched the remedy of one whose prop-
erty has been sold under a judgment subsequently reversed.
If the defendant may not get his property as a matter of
right, still the purchaser, if he has procured the sale, must,
under all authority, account for its value.   He is compelled
to make restitution, either by returning the property if he
still has it when the judgment is set aside, or by paying
over an equivalent in money.   Thus, in Hays v. Griffith,
85 Ky., 377 (3 S. W., 431) (11 S. W., 306), this court, in an
opinion by Chief Justice Pryor, who also wrote the opin-
ion in Yocum v. Foreman, *supra*, held that a sale of prop-
erty under a judgment subsequently reversed passed the
title to the purchaser, but this general rule was announced:
"When money has been collected under an erroneous judg-
ment that has been reversed, the party obtaining it may
be required to pay back the money by rule to do so, or a

restitution of the property, if not sold, may be required
in the same manner; but the. proper remedy, where the
land or personalty of the party has been sold, and a re-
covery of its value is denied, is to bring an action for dam-
ages, alleging such facts as will show that the plaintiff
is entitled, by reason of the reversal, to what he has been
deprived of by the erroneous judgment." The court ap-
proved the language used in Thompson v. Thompson, 1
N. J. Law, 159, where it was said the defendant was enti-
tled "to be restored to all he has lost by occasion of the
judgment, and this is, and ought to be, the measure of
damages." The case of Canal Co. v. Gordon, 2 Abb. U.
S., 479, Fed. Cas. No. 13,189, the text of 1 Suth. Dam. p.
831, and cases from other State courts, were cited by the
court sustaining the conclusion of the court. The doctrine
announced in that case may not be applicable to the broad
extent, the language imports in all cases, as was pointed
out in Bridges v. McAlister (Ky.) 51 S. W., 603, but this
is no reason why it may not be applied here. It is certainly
not a new doctrine. In Morgan v. Hart (1848) 9 B. Mon.,
80, this court said: "The proceeding by rule or motion
for restitution of money or property obtained under the
direct operation of a judgment which has been reversed is
well known in courts of law, and we have no doubt it is
equally allowable and appropriate in courts of equity,
where, in the practice in this State, it is often resorted to.
The chancellor certainly has power to remedy the injustice
which may be done under his own orders, when vacated by
an appellate tribunal." The primary object, in view in
all the instances when one's property has been seized and
sold under judgments subsequently reversed, is, as indicat-
ed in the last case cited, "to remedy an injustice," and it
is manifest any fixed rule must be subject to exceptions.

Here, if the plaintiffs, Riley and others, had bought the defendant's property, a restitution of the property, if they still owned it, or an equivalent in money, if they did not, would be the simple remedy. There would be no equities on behalf of the purchasers for moneys paid out as the purchase price. The debts canceled by the purchase were no debts at all against the defendant. But while the attorney of these plaintiffs must, under all authority, occupy the place of his clients with respect to having notice of what is in the record, and especially as he was interested in the recovery to the extent of one-fourth, it would yet seem on equitable principles and on the facts of this case, he ought to have back whatever money he has actually paid out as purchase money on the property. He is not in fact a party plaintiff who procured the erroneous judgment and the sale, nor is he a stranger to the record who is to be fully protected in his purchase. He got a good title to the property he bought, just as his clients would have gotten had they bought it, but he must account for what he got just as they must have accounted. The difference is that he got the property burdened or lessened by what he paid out for it, and they would have gotten it without paying out any thing. It is claimed that, being merely an attorney, he is to be protected as a stranger; but this court in Salter v. Dunn, 1 Bush, 319, said: "We regard it as the well-settled doctrine in this and our sister States that an attorney in a case is privy to his client, and as much bound, if not, indeed, more, to take notice of all the errors, as the client; and when he becomes a purchaser at a judicial sale, made for the benefit of the client, every error and equity which would avail against him [the client] had he been the purchaser, growing out of the errors and irregularities of the record, would affect the attorney's

purchase." Freem. Ex'ns, section 349; Freem. Judgm.
section 484. In this case the purchaser—the appellee—apparently still holds the property. It follows from what we
have said that his claim for rents, as set up in his petition, must be denied; that the value of the property, or
the property itself, must be adjudged to Mrs. Cavanaugh.
The purchase money paid out by appellee, which appears
to have been $2,213, with interest from the 1st day of
April, 1889, is to be a charge on the property, less the
rents and profits appellee has received from the property
since his possession of it in May, 1896. While
the proper judgment may be rendered in ordinary
where the action is now pending, it may be that the equities of the parties may be more appropriately adjusted
on the equity side of the docket. The judgment is reversed
for proceedings consistent with this opinion.