SETH JOHNSON, AS ADMINISTRATOR AND AS INDIVIDUAL,
H. L. JOHNSON, EMMA COLEMAN, NANCY HYS-
HAM, ORZA JOHNSON, DAVID JOHNSON, SIMON
P. JOHNSON, MARY L. PIERSON, AND RAY JOHN-
SON, HELEN JOHNSON, JOSEPHINE JOHNSON,
MINORS, BY THEIR NEXT FRIEND, C. E. LIDDON,
*Plaintiffs in Error*, v. DANIEL L. MCKINNON, *De-
fendant in Error.*

1. A recital in a sheriff's deed, that the sale of the property
was made by virtue of an execution issued out of the circuit
court, is sufficient to show that the officer had authority to
sell, although it would be well for the sheriff to recite in his
deed both the judgment and execution under which he acted,
as it would be productive of convenience, pointing the sheriff
to his authority to sell, and facilitating the purchaser in trac-
ing his title.

2. Jurisdiction is judicial power, and a decree entered in a
proceeding as to a matter outside of the judicial sphere of
action is not merely voidable, but absolutely void.

3. A deficiency decree may be entered only in suits for the fore-
closure of mortgages. When rendered in an action to en-
force a vendor's lien, such decree is absolutely void, not simply
irregular or voidable, and is subject to collateral attack.

4. The law imputes to an attorney knowledge of defects in
legal proceedings for the sale of property taken under his
direction, and the title of such attorney to land purchased by
him at a judicial sale decreed in proceedings in which he acted
as an attorney falls with the reversal of the decree directing
the sale.

This case was decided by Division B.

Writ of Error to the Circuit Court for Jackson
county.

The facts in the case are stated in the opinion of
the court.

*Benjamin S. Liddon,* for plaintiffs in error:

*D. L. McKinnon,* for defendant in error.

PARKHILL, J.—The plaintiffs in error brought an action of ejectment in the circuit court for Jackson county against the defendant in error for the recovery of certain lands lying in said county. There was trial by jury and judgment for defendant. It is admitted that, as to all the lands in controversy, except forty acres in section 23, tp. 5 n. r. 13 w., both the plaintiffs and defendant claimed title from the same source, one P. P. Johnson, deceased. The plaintiffs claimed title as heirs at law of the said P. P. Johnson, and the defendant claimed title by virtue of a sheriff's deed, made on an execution sale under a judgment recovered by one Alexander D. McKinnon against Seth Johnson, as administrator of P. P. Johnson. The defendant seems to have established his title to the forty acres in section twenty-three by virtue of a tax deed, and there is no controversy between the parties concerning this part of the *locus in quo.*

The defendant offered in evidence the sheriff's deed of February 9th, 1898, conveying to him the lands involved in this suit, except the forty acres already mentioned, said deed reciting that the sheriff, "by virtue of an execution issuing out of the circuit court of Jackson county, Florida, on the 22nd day of December, A. D. 1897, wherein Alexander D. McKinnon was plaintiff and Seth Johnson as administrator of P. P. Johnson, deceased, was defendant," levied upon and sold the lands described therein to D. L. McKinnon for the sum of forty-nine dollars and twenty-five cents. To the introduction of said deed the plaintiffs objected because "the deed did not purport to be predicated upon

a judgment, but only that it was predicated upon an execution." The objection was overruled and the plaintiff excepted, and this ruling is made the first assignment of error.

Section 1634 General Statutes of 1906, provides that whenever a sale shall be made *by virtue of any execution,* the officer making the sale shall execute to the purchaser a deed of conveyance of the property sold. It does not prescribe the facts which shall be stated in the deed, or that the judgment under which the sheriff acted shall be recited. This deed recites sufficient to show that the officer had authority to sell, that the sale was made by virtue of an execution issued out of the circuit court, and that is all that is necessary; although it would be well for a sheriff to recite in his deed both the judgment and execution under which he acted, as it would be productive of great convenience, pointing the sheriff to his authority to sell, and facilitating the purchaser in deriving his title. 17 Cyc. 1344; Howard v. North, 5 Tex. 290, S. C. 51 Am. Dec. 769; Clark v. Sawyer, 48 Cal. 133; Jordan v. Bradshaw, 17 Ark. 106; Perkins v. Dibble, 10 Ohio 433, S. C. 36 Am. Dec. 97; Jones v. Scott, 71 N. C. 192.

The defendant offered in evidence a decree in the cause of Alexander D. McKinnon vs. Seth Johnson as administrator of P. P. Johnson, deceased and other parties, heirs at law of P. P. Johnson deceased. This decree was rendered by the judge of the circuit court for Jackson county, on the 19th day of October, A. D. 1897. It provided that the complainant A. D. McKinnon have and recover from the defendant Seth Johnson as administrator of the estate of P. P. Johnson, deceased, the sum of $2,523.00 damages, and that the said complainant have a vendor's lien upon certain lands described in the bill of complaint and in this decree, and

required the said Seth Johnson, as said administrator to pay the said sum within ten days, and in default thereof one James C. McKinnon, appointed special master, was directed to sell the lands described, and to report his acts and doings to the court. The lands described in said decree are not involved in the instant case.

The defendant offered in evidence a deficiency decree, made by the Circuit Judge on the 17th day of December, 1897, in the same cause of A. D. McKinnon v. Seth Johnson as administrator, and the other parties mentioned in the decree of October 19th, 1897, declaring a vendor's lien. This deficiency decree recites the coming on of the cause to be heard upon application to confirm the report of the sale made by J. C. McKinnon as special master, in pursuance of the decree rendered on the 19th day of October, A. D. 1897, and confirmed said sale, directed a deed to be executed by the master, and provides further as follows: "And it appearing that there is still a balance due the complainant from the said Seth Johnson as administrator of the estate of P. P. Johnson deceased, upon the said decree rendered on the 19th day of October, A. D. 1897, as principal and interest to date, after deducting the sum of four hundred and ten dollars for which the land described in said decree sold, of one thousand seven hundred and thirty-seven dollars and forty-nine cents as costs expended by the complainant in and about this suit. It is therefore further ordered, adjudged and decreed that the complainant have and recover of the defendant Seth Johnson as administrator of P. P. Johnson the said sum of one thousand seven hundred and thirty-seven dollars and forty-nine cents together with the sum of fifty-three dollars and seventy-one cents costs, and that execution do issue therefor, to be levied and

collected of the goods, chattels, lands and tenements of the said P. P. Johnson in the hands of the said Seth Johnson as administrator."

The defendant offered in evidence an execution in words and figures following:

"STATE OF FLORIDA,
  COUNTY OF JACKSON.

To all and every sheriff of the state of Florida—Greeting: You are commanded that of the goods and chattels, lands and tenements of Seth Johnson, as administrator of the estate of P. P. Johnson, deceased, you cause to be made the sum of one thousand, seven hundred and thirty-seven dollars and forty-nine cents which lately on the 17th day of December, 1897, in our Circuit Court of Jackson county, of the state of Florida, held at the court house in Marianna in and for the county of Jackson, was recovered against Seth Johnson as administrator of P. P. Johnson, deceased, by Alexander D. McKinnon for damages with legal interest thereon until paid, together with fifty-three dollars and seventy-one cents for his costs by said Alexander D. McKinnon in and about said suit in that behalf expended, whereof the said Seth Johnson as administrator of the estate of P. P. Johnson, deceased, is convicted, as appears to us of record, and that you have the same before the judge of our said court at the court house in Marianna aforesaid, when satisfied, to satisfy the said Alexander D. McKinnon damages, interest and costs aforesaid, and have then there this writ." The endorsements upon this execution show that it was levied on lands involved in the instant case, and conveyed to Daniel L. McKinnon, the defendant herein, by sheriff's deed already mentioned.

15—Vol. 54

The defendant offered in evidence the letters of admin-istration of Seth Johnson, as administrator of P. P. Johnson, deceased. All these papers, decrees, execution and letters of administration were objected to by plain-tiffs, but the court overruled the objections, and plain-tiffs excepted.

The second assignment of error is founded upon the admission in evidence of the deficiency decree of the 17th day of December, 1897, in the cause of Alexander D. Mc-Kinnon v. Seth Johnson, administrator et al. The ob-jections to the introduction of this decree are, that it is void, not authorized by law, that the court was without authority or jurisdiction to render a deficiency decree in the cause wherein it was rendered.

A decree rendered by a court having jurisdiction of the parties and the subject matter, unless reversed or annulled in some proper proceeding, is not open to contradiction or impeachment, in respect to its validity, verity or binding effect, by parties or privies in any col-lateral action or proceeding. 23 Cyc. 1055; Rushing v. Thompson's Executors, 20 Fla. 583, text 596.

Where the decree is such a one as the court had juris-diction to render, the presumptions are all in favor of its regularity and validity until vacated by some proper proceeding instituted directly for the purpose of correct-ing errors therein and cannot be attacked collaterally. Lee v. Patten, 34 Fla. 149, 15 South. Rep. 775; Finley v. Chamberlin, 46 Fla. 581, 35 South. Rep. 1. A de-cree that is absolutely null and void, however, may be collaterally assailed. But the decree that is voidable only, because irregular or erroneous, must be moved against in time by motion to vacate, or by resort to an appellate tribunal, otherwise it becomes an absolute ver-ity. Einstein v. Davidson, 35 Fla. 342, text 355, 17

South. Rep. 563; Lord v. Dowling, 52 Fla. 313, 42 South. Rep. 585.

Jurisdiction is simply power. Any power possessed by the judicial tribunal, either affirmative or negative, is jurisdiction. This is the definition of jurisdiction given by Chief Justice Green of New Jersey; and VanFleet, in his work on collateral attack, section 58, says it is the best he has ever seen. And this is the meaning given to the word jurisdiction by this court. In Garvin v. Watkins, 29 Fla. 151, text 165, 10 South. Rep. 818, text 821, this court said: "Did the court have jurisdiction to render the decree for the sale of the wife's property? * * * Our inquiry * * * now is to ascertain if the court had the *power* to order the sale of the property." In Einstein v. Davidson, *supra,* this court said: "The judgment entered by the clerk was such a judgment as the clerk under the law had the *power* under certain circumstances to enter." In Rushing v. Thompson's Executors, 20 Fla. 583, text 596, it is declared: "It is a well settled rule that jurisdiction being obtained over the person and the subject matter, no error in its exercise can make the judgment void. The *authority to decide* being shown it can-cannot be divested by being improperly or incorrectly employed." In Finley v. Chamberlin, 46 Fla. 581, 35 South. Rep. 1, it is said: "The court in which the suit was instituted had undoubted jurisdiction of it. The question of disqualification was one of the points to be adjudicated therein." And so, in the case of Johnson v. McKinnon, 45 Fla. 388, text 402, 34 South. Rep. 272, in which the decree of October 19, 1897, was rendered and which is objected to here, this court said: "Did he make or state such a case in his bill as to give a court of equity *jurisdiction* or to entitle him to the relief prayed? * * * We must answer this ques-

tion in the negative. In our opinion, the bill was well open to attack by general demurrer and the same should have been sustained. The allegations in the bill taken in their entirety did not warrant a court of equity in creating and enforcing a vendor's lien upon the lands in question at the instance of appellee."

"Jurisdiction," says the Supreme Court of New Jersey, "may be defined to be the right to adjudicate concerning the subject matter in the given case. To constitute this there are three essentials: First. The court must have cognizance of the class of cases to which the one to be adjudged belongs. Second. The proper parties must be present. And, third. The point decided must be, in substance and effect, within the issue. That a court cannot go out of its appointed sphere, and that its action is void with respect to persons who are strangers to its proceedings, are propositions established by a multitude of authorities. A defect in a judgment arising from the fact that the matter decided was not embraced within the issue has not, it would seem, received much judicial consideration. And yet I cannot doubt that, upon general principles, such a defect must avoid a judgment. It is impossible to concede that because A and B are parties to a suit, that a court can decide any matter in which they are interested, whether such matter be involved in the pending litigation or not. Persons by becoming suitors do not place themselves for all purposes under the control of the court, and it is only over these particular interests which they choose to draw in question that a power of judicial decision arises. If, in an ordinary foreclosure case, a man and his wife being parties, the court of chancery should decree a divorce between them, it would require no argument to convince every one that such decree, so far

as it attempted to affect the matrimonial relation, was void." Munday v. Vail, 34 N. J. L. 418, text 422.

The supreme court of the United States, in the case of Windsor v. McVeigh, 93 U. S. 274, text 282, say: "The doctrine invoked by counsel, that, where a court has once acquired jurisdiction, it has a right to decide every question which arises in the cause, and its judgment, however erroneous, cannot be collaterally assailed, is undoubtedly correct as a general proposition, but, like all general propositions, is subject to many qualifications in its application. All courts, even the highest, are more or less limited in their jurisdiction: they are limited to particular classes of actions, such as civil or criminal; or to particular modes of administering relief, such as legal or equitable; or to transactions of a special character, such as arise on navigable waters, or relate to the testamentary disposition of estates; or to the use of particular process in the enforcement of their judgments. *Norton v. Meador,* Circuit Court for California. Though the court may possess jurisdiction of a cause, of the subject-matter, and of the parties, it is still limited in its mode of procedure, and in the extent and character of its judgments. It must act judicially in all things, and cannot then transcend the power conferred by the law. If, for instance, the action be upon a money demand, the court, notwithstanding its complete jurisdiction over the subject and parties, has no power to pass judgment of imprisonment in the penitentiary upon the defendant. If the action be for a libel or personal tort, the court cannot order in the case a specific performance of a contract. If the action be for the possession of real property, the court is powerless to admit in the case the probate of a will. Instances of this kind show that the general doctrine stated by counsel is subject to many qualifications. The judgments mentioned, given in the

cases supposed, would not be merely erroneous: they would be absolutely void; because the court in rendering them would transcend the limits of its authority in those cases."

The record evidence shows that the deficiency decree was rendered under a decree declaring a vendor's lien in an action to enforce such lien. In Johnson v. Mc-kinnon, 45 Fla. 388, text 402, 34 South. Rep. 272, text 276, in speaking of this very deficiency decree, this court said that "we know of no *authority* for entering a de-ficiency decree in actions to enforce vendor's liens. As we understand it, the rule of procedure in giving deficiency decrees does not be-long to a court of equity, unless specifically conferred by statute or a rule of court. Webber v. Blanc, 39 Fla. 224, 22 South. Rep. 655. Equity Rule 89 provides for the entry of a deficiency decree only in suits for the foreclosure of mortgages." We must hold, therefore, that this decree was absolutely void, not sim-ply erroneous, irregular or voidable; and that it was sub-ject to collateral attack herein. It was not erroneously made in the exercise of jurisdiction. It was rendered without power, without authority, without jurisdiction. We cannot presume in this case that the court had jurisdiction of the subject-matter, because the record disproves it. Finley v. Chamberlin, *supra;* Epping, Bel-las & Co. v. Robinson, 21 Fla. 36. This question was considered by the supreme court of Virginia in the case of Seamster v. Blackstock, 83 Va. 232, 2 S. E. Rep. 36. That was an action of ejectment. The defendants claimed through and under one Allen Conner, who pur-chased the land in controversy under a decree in a chan-cery suit, which was brought by the widow of one Wil-liam Blackston, deceased, for the sole purpose of having

assignment of her dower in the lands of her deceased husband. The court not only directed an assignment of dower, but *sua sponte,* decreed a sale of the residue of the land belonging to the heirs. It was held that, the court having exceeded its jurisdiction, the decree of sale was void, and might be collaterally attacked. See also Stark v. Mercer, Admr., 3 How. (Miss.) 377, a case in point. James v. Smith and Bristow, 2 Rich. (S. C.) 183; Withers and others v. Patterson, 27 Tex. 491; J. B. Watkins Land-Mortg. Co. v. Mullen (Kans.), 54 Pac. 921.

The plaintiffs offered and read in evidence the mandate of this court dated the 8th day of March, 1903, showing the reversal in this court on the 3rd day of February, 1903, at the January term, of the decree of the circuit court for Jackson county, rendered December 17th, 1897, in the cause wherein Alexander D. McKinnon was plaintiff and Seth Johnson et al., were defendants. This case is reported as Johnson et al. v. McKinnon, 45 Fla. 388, 34 South. Rep. 272. There will be found the decrees introduced in evidence herein under which the defendant claims title. It was admitted in the evidence at the trial that D. L. McKinnon, defendant herein, was counsel for A. D. McKinnon in obtaining the decrees admitted in evidence herein under which this sale was made, that D. L. McKinnon had full knowledge of the proceedings in said cause, and conducted the same, had sale of the land in controversy made as counsel for A. D. McKinnon, and bought the lands involved herein, at the execution sale under said decrees, and received the sheriff's deed, which was introduced in evidence herein; that this cause, wherein the decrees were rendered was appealed to the supreme court, without supersedeas, and the decree of December 17, 1897, was reversed; that before the reversal of said

decree, D. L. McKinnon bought the lands herein at the execution sale and received the sheriff's deed.

The plaintiffs in error contend that they are entitled to recover the lands bought by defendant under the circumstances above enumerated, and requested the court to give an appropriate instruction, submitting this contention to the jury. The refusal to give this instruction is assigned as error. It is argued that, even if the deficiency decree, by virtue of which the lands involved here were sold, is not a void decree, but merely erroneous and voidable, and has been reversed upon appeal without supersedeas, a purchase by the solicitor for complainants in the cause should not be allowed to stand.

We think the court erred in refusing to give the requested charge to the jury. It is considered that the party at whose instance a judicial sale has been made must be cognizant of any errors or irregularities in the proceedings, and therefore, if he becomes the purchaser at such sale, the rule protecting *bona fide* purchasers in case of the reversal of the judgment has no application, but his title will fall with the judgment, and the same view is taken of purchases by the attorney of such party. The plaintiff's attorney, on becoming a purchaser at a sale under execution in a case which he has conducted occupies a position as unfavorable as 'that of the plaintiff, and must lose the property upon the reversal of the judgment. 17 Amer. & English Ency. of Law, (2nd ed.) 1019; 24 Cyc. 66; Freeman on Judgments, §484; Galpin v. Page, 18 Wallace (U. S.) 350, 21 Lawyers' Ed. 959; Phillips v. Benson, 82 Ala. 500, 2 South. Rep. 93; Mitchell v. Hardie, 84 Ala. 349, 4 South. Rep. 182; Phillips v. Benson, 85 Ala. 416, 5 South. Rep. 78; Johnson v. Dooly, 72 Ga. 297, text 299; Smith v. Brittenham, 109 Ill. 540; Hays v. Cassell, 70 Ill. 669; Mullin v. Atherton, 61 N. H. 20; Simonds v. Catlin, 2 Caines

61; Stroud v. Casey, 25 Tex. 740; Cavenaugh v. Willson, 22 Ky. Law Rep. 474, 57 S. W. Rep. 620; Salter v. Dunn, 1 Bush (Ky.) 311; English v. Otis, 125 Iowa 555, 101 N. W. Rep. 293; Singly v. Warren, 18 Wash. 434, 51 Pac. Rep 1066.

Defendant in error urges that a contrary doctrine has been announced by this court in Florida Central Railroad Co. v. Bisbee, Jr. 18 Fla. 60. In that case it is held: "What is done under a decree is valid so far as third persons are concerned, notwithstanding the subsequent reversal of the decree. Where monies collected under such decrees are applied by order of court to a debt of plaintiff to a third person, there is no remedy against such third person upon a subsequent reversal of the decree. Where a receiver has moneys sequestered by him under a decree finding such moneys applicable to plaintiff's demand, and a portion of such moneys is applied by order of court to the payment of the claim of plaintiff's attorney against the plaintiff for his services in the suit, a subsequent reversal of the decree and the order directing payment to the attorney of his claim against plaintiff, there being no supersedeas when the money was applied, gives the defendant no claim against the attorney."

On page 64 of the opinion, the court states the case as made by the pleadings as follows: "that the defendant, representing the state of Florida as attorney and solicitor, received, on the 18th day of November, 1875, a judgment against the plaintiff corporation for the sum of three hundred and sixty-eight thousand dollars, on account of interest due on bonds of the plaintiff corporation held by the state; that under this judgment a master was directed to take possession of the property of the plaintiff, to sell the same, and to receive the incomes from its management; that the judgment provided that

the plaintiff should be entitled to a credit for all moneys that should come to the hands of the master; that on the 27th of July, A. D. 1876, the master, having funds then in his possession realized by the management of plaintiff's property under said judgment, the said judgment being in full force and effect, paid the defendant the sum of three thousand dollars upon the order of the court duly made and with the consent, sanction and approval of the state; that the said sum was passed to the credit of the state of Florida for defendant's said services as attorney and counsellor, and that upon a full and final settlement afterwards had between the defendant and the state, the defendant gave the state of Florida credit for this money thus paid. Subsequently, upon an appeal, both the judgment and the order were reversed." The court held that the plaintiff corporation, under these circumstances, could not recover the money thus paid defendant for services as attorney and counsellor anterior to the reversal of the judgment and order. The court said: "The judgment plaintiff has applied money adjudged at the time to be applicable to the payment of her own claim to the payment of an undisputed debt due by her. The defendant in judgment must look to her, and not to her creditors. It will not be denied, upon the reversal of this judgment, that the Florida Central Railroad Company had a right to restitution as against the party plaintiff in the judgment. If this be so, it certainly must be evident that this corporation cannot recover as against the attorney. She cannot have a subsisting right of action against the party and against her attorney and agent at the same time."

This, however, is not the case here. Had a bona fide purchaser, not the party or his attorney, bought the land at execution sale, and the purchase money been paid to

the plaintiff in execution, A. D. McKinnon, and by him paid over to his attorney, D. L. McKinnon for his services, then, upon the subsequent reversal of the judgment, the defendant would have a right to restitution as against the party plaintiff in the judgment, but not as against his attorney. The defendant, Seth Johnson, cannot have a subsisting right of action against the party and against his attorney at the same time. Langley v. Warner, 3 Comst. (N. Y.) 327; Butcher, Jr. v. Henning, 90 Hun. (N. Y.) 565. But here the attorney bought the land at the execution sale and held title thereto after the reversal of the judgment, and at the time of the trial of this action brought by the defendant in execution to recover the land.

Now, the rule is that when a judgment or decree is reversed, the defendant is entitled to be restored to all things which he has lost thereby.

Upon the reversal of a judgment after a sale has been made under execution to a *stranger* to the suit, the defendant must seek redress from the *plaintiff*. Where the plaintiff has received the *proceeds* of the sale, the defendant may recover in an action for money had and received. If, however, the money, after being paid to plaintiff, is by him paid to a third person, it cannot be recovered from such person, though he was one of the plaintiff's attorneys. 3 Freeman on Executions, §346.

Where land has been sold, and an *innocent party* is the purchaser, his title will not be disturbed, and in that case the money produced at the sale is all the defendant can claim to have restored. But where the *plaintiff* to the erroneous judgment, or one standing in privity with him is the purchaser, and still he retains the ownership, the defendant, on the reversal of the judgment, becomes entitled to recover the land, the specific property. Major

v. Collins, 17 Ill. App. 239, and cases cited on text page 242; Hannibal and St. Joseph R. R. Co. v. Brown, 43 Mo. 294.

And as we have seen, Freeman in the third volume of his work on Executions, §347, says: "The plaintiff's attorney, on becoming a purchaser at a sale under execution in a case which he has conducted, occupies a position as unfavorable as that of the plaintiff and must lose the property upon the reversal of the judgment." It is clear, says Freeman in his work on Judgments, §484, that an attorney is as much affected by the irregularity of process which he takes out as his client is, and it is on this ground that the plaintiff's attorney, if a purchaser at the sale, is liable to lose his title by the reversal of the judgment.

In Hannibal and St. Joseph R. R. Co. v. Brown, *supra,* the supreme court of Missouri says the attorney is chargeable in the same manner as the plaintiff, because he was the attorney who gave direction to the whole matter, and was cognizant of all the facts.

In the case of South Fork Canal Co. v. Gordon, 2 Abb. U. S. Cir. Ct. Rep. 479, cited by counsel as holding a contrary doctrine, "the complainant was mentioned in the decree as a possible bidder, and provision made for crediting his bid on the amount adjudged due him. The master reported that H. the assignee of the complainant, became the purchaser, and when the report was confirmed, the master was directed to execute to him a deed of the property. Held that the purchaser acquired a title to the premises which could not be divested by a reversal, in the supreme court of the judgment, although such reversal proceeded upon the ground that the lien established by the complainant extended to a portion of the canal only, and that the judgment was erroneous in directing the whole to be sold."

That decision was rendered by Mr. Justice FIELD in the ninth U. S. circuit court for California, but the holding therein was subsequently overruled by the Supreme Court of the United States, speaking through the same eminent jurist, in the case of Galpin v. Page, *supra,* and the doctrine, which we think the correct one, was announced to be, that the law imputes to an attorney knowledge of defects in legal proceedings for the sale of property taken under his direction, and the title of such attorney to land purchased by him at a judicial sale decreed in proceedings in which he acted as an attorney falls with the reversal of the decree directing the sale. We conclude, therefore, that the court erred in refusing to so instruct at the request of the plaintiff.

For the errors found the judgment is reversed.

TAYLOR, P. J., and HOCKER, J., concur;

SHACKLEFORD, C. J., and WHITFIELD, J., concur in the opinion.

COCKRELL concurs upon the second point only.