### GIBSON COAL & COKE CO. et al. v. ALLEN et al.

(Circuit Court of Appeals, Sixth Circuit. April 4, 1922.)

No. 3622.

1. **Removal of causes ⬚114—In a suit to vacate purchase under state decree subsequently reversed, federal court cannot restore decree.**

In a suit, removed to the federal court, to vacate a sale by guardian of plaintiffs to defendants, where order for sale had been reversed by the state court on appeal by the minors, but the sale was not then vacated, because it did not appear that the defendants were not bona fide purchasers, the federal court cannot restore the decree for sale after eliminating from the decree and from the contract of sale the provisions which made it erroneous.

2. **Infants ⬚111—Plea held not to raise issue that suit to attack judgment confirming sale was not brought within time limitation by special statute.**

An answer alleging that the petition was not filed within 5 years after a sale of infants' property was confirmed, and pleading "the statute of limitations in such cases made and provided," does not raise the issue that the suit to attack the judgment confirming the sale was not instituted within 12 months after they attained their majority, as required by Civ. Code Prac. Ky. § 391.

3. **Time ⬚5—Suit held instituted within 12 months after minority.**

Where the birthday of twin sisters was on January 8, an action commenced January 7 in the year they would be 22 was brought within 12 months after they attained the age of 21, as required by Civ. Code Prac. Ky. § 391, in view of the decisions of the Court of Appeals of that state, construing section 681 and holding that, when the computation is to be made from the day itself, and not from the act done, then the day in which

the act was done must be excluded, notwithstanding the rule established in that state that a minor attains majority on the day before the twenty-first birthday.

**4. Infants ⬤≈111—Where girls marry within time limited by statute after majority for attacking judgment, exception as to a married woman does not apply.**

Under Civ. Code Prac. Ky. § 391, providing that an infant other than a married woman may, within 12 months after attaining majority, show cause against a judgment, the exception as to married women was evidently based on the presumption their husbands would protect their rights, and does not apply where the marriage occurred after girls attained their majority, but within the 12 months allowed for instituting the proceedings.

**5. Guardian and ward ⬤≈108—Evidence held to show subsequent purchaser had notice of facts and did not purchase in usual course of business.**

Evidence that the corporation which made an original contract for the purchase of lands of a minor, the corporation which purchased such lands at the sale after order of the court, and the corporation to which the lands were subsequently transferred were all under the same officers, the ultimate purchaser having caused the formation of the other corporations to acquire the lands, *held* to sustain a finding that the ultimate purchaser had notice of all facts known to its predecessors, and that the purchase was not for value without notice in the ordinary course of business, but was a transaction in the nature of a merger or consolidation, so that the ultimate purchaser took only the rights which the predecessor had in the land.

**6. Guardian and ward ⬤≈108—Evidence held to show purchaser at guardian sale was not bona fide.**

Evidence that a corporation affiliated with the purchaser at guardian sale had made a contract for the purchase of mineral rights in the land of minors with the mother of the minors before she was appointed guardian, that an attorney representing the two corporations conducted the proceedings for the appointment of the guardian and the sale of the rights, and that the officers of the companies informed the guardian, when she attempted to withdraw from her bargain, that she could be held to it and could not sell to another, and made an additional payment to her to permit the sale to go on, *held* to show that the purchaser at the sale was not a bona fide purchaser, entitled to retain the property after the decree for sale was reversed on appeal by the minors.

**7. Guardian and ward ⬤≈108—Purchaser cannot make written contract before appointment of guardian for purchase of infants' lands.**

Though a prospective purchaser may make a proposition to a guardian to buy the lands of the infants, and may offer fair arguments to show the advisability of the sale, a bona fide purchaser may not enter into a written contract for the sale of the property with the mother of the minors before she is appointed guardian to take charge of the proceedings, and pay to guardian a sum of money for her own use to induce her to consent to the sale.

**8. Courts ⬤≈365—Dictum of state court, followed by later state decisions as determining the question, is accepted by the federal court.**

Even though a declaration by the state court was a dictum in the case in which it was made, it must be accepted by the federal court as final, where it was cited and approved by subsequent decisions of the state court as dispositive of the question in that state.

**9. Guardian and ward ⬤≈105(1)—Fraud unnecessary to authorize setting aside guardian's sale under erroneous decree to purchaser not bona fide.**

Where the land of minors was sold, under a decree which was subsequently reversed for error, to a purchaser who was not bona fide, it is unnecessary to show actual fraud by the purchaser to justify setting aside the sale.

**10. Guardian and ward** &⇒108—**Purchaser under erroneous decree, which he had secured by controlling proceedings therefor, is not bona fide.**

A purchaser of the land of minors, who had procured the erroneous decree under which the lands were sold by intermeddling in the proceedings and taking charge thereof, is not a bona fide purchaser.

Appeal from the District Court of the United States for the Eastern District of Kentucky, at Catlettsburg; Andrew M. J. Cochran, Judge.

Suit by Maggie Allen and others against the Gibson Coal & Coke Company and another, to vacate a sale made by plaintiffs' guardian to defendants. Decree for plaintiffs, and defendants appeal. Affirmed.

On July 11, 1906, A. P. Webb died intestate, seized in fee simple of the land described in the plaintiffs' petition, leaving a widow and six minor children surviving him. The name and date of the birth of each of these children are as follows: Oliver Webb, born November 15, 1891; Mary and Maggie Webb, born January 8, 1896; Troy Webb, born May 10, 1899; Londa Webb, born June 24, 1901; and Willie Webb, born November 3, 1903.

In the spring of 1909 Lizzie Webb, the widow of A. P. Webb and mother of these children, entered into a written contract with the Laclede Coal Company for the sale of the minerals underlying these premises and certain mining rights in the surface, at an agreed price of $10 per acre, and at that time the Laclede Coal Company paid to Lizzie Webb $500 on the purchase price. On July 26, 1909, Lizzie Webb was appointed guardian of her minor children, and on August 25th of that year brought an action in the circuit court of Floyd county, Ky., to sell the minerals and mining rights which she had before her appointment contracted to sell to the Laclede Coal Company, averring in her petition, filed in that action, that the proceeds of this sale were necessary for the maintenance and education of her children. On November 10, 1909, a judgment was entered by the Floyd circuit court, ordering and directing the sale of these minerals and mining rights, and in pursuance of this judgment, a sale of the same was made in due form of law to the Gibson Coal & Coke Company. This sale was confirmed on March 17, 1910. In April, 1913, the Gibson Coal & Coke Company sold and conveyed these minerals and mining rights to the Beaver Creek Consolidated Coal Company for stock in that company, two for one, which stock was distributed by the Gibson Coal & Coke Company among its stockholders.

Evidence was offered tending to prove that W. F. Hite and his associates incorporated, or caused to be incorporated, all of these companies, the two last named being incorporated on the same date; that these companies were incorporated and controlled by the same interests, for the purpose of purchasing coal and mining rights in this locality, and that the Beaver Creek Consolidated Coal Company was incorporated for the further purpose of taking over all the properties purchased and owned by the Laclede and the Gibson Coal & Coke Companies; that after these properties were taken over by the Consolidated Company, and stock in that company issued in payment therefor, that this stock was distributed to the stockholders of the Laclede and Gibson Coal & Coke Companies, and thereupon these corporations were dissolved. It further appears from the evidence that W. F. Hite was general manager, director, secretary, and treasurer of both the Laclede Coal Company and the Gibson Coal & Coke Company from the time of their organization until their dissolution, and that during this time he personally supervised and managed the buying of land, minerals, and mining rights by these companies, and particularly the minerals and mining rights in question; that W. F. Hite has also been the general manager, director, secretary, and treasurer of the Beaver Creek Consolidated Coal Company from the date of its organization, and that he still retained such official relation to that company at the time of the trial of this cause in the district court. There is also evidence tending to prove that W. F. Hite and his associates promoted and incorporated, or caused to be incorporated, other companies for the purpose of buying coal and coke lands in

&⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

this territory, all of which were eventually taken over by the Beaver Creek Consolidated Coal Company in pursuance of the original plan, purpose, and intention, in furtherance of which the corporation last above named was created.

Early in 1917 the children above named of A. P. Webb, defendants in the action brought by their guardian in the Floyd circuit court, perfected an appeal in accordance with the statutes of Kentucky from the judgment, orders, and decrees entered by the circuit court of Floyd county in that action, in reference to tract 776, containing 377.40 acres to the Court of Appeals of Kentucky, which court dismissed that appeal as to Oliver Webb for the reason that it had not been taken within 12 months next after he had reached the age of 21 years, and reversed, as to the other appellants, the decree of the circuit court ordering and directing the sale of these minerals and mining rights, but refused to reverse the decree confirming the sale of same to the Gibson Coal & Coke Company, for the reason that the record did not disclose that that company was not a bona fide purchaser, and further held, by a majority of the court, that the decree reversing the judgment ordering and directing the sale of these minerals and mining rights did not ipso facto reverse the judgment confirming the sale.

Thereupon the children of A. P. Webb on the 7th day of January, 1918, filed the petition in this action in the circuit court of Floyd county, for the purpose of reversing the order and judgment of the circuit court of that county, confirming the sale entered in the original action brought by their guardian, and to set aside that sale, for the reason that the Gibson Coal & Coke Company was not a bona fide purchaser for value, but, on the contrary had unlawfully, wrongfully, and fraudulently procured, by fraudulent collusion with their guardian, the institution of the suit by her to sell these minerals and mining rights, and conspired to bring about a sale of the infants' property at less than its fair value, when there was not the necessity for it, as required by such statute, as a prerequisite to such suit, and that after having procured their mother, before she was appointed guardian, to enter into a written contract to sell this property for $10 per acre, and having induced her to be appointed guardian and file a petition as guardian to obtain an order for the sale thereof, the said Gibson Coal & Coke Company, through its agents and attorney, took absolute control and management of said cause, to the exclusion of said guardian, and fraudulently procured the erroneous order of sale to be entered, that was reversed by the Kentucky Court of Appeals, and procured said sale to be made to itself and confirmed by the court at a wholly inadequate and unfair price.

Upon petition of the Gibson Coal & Coke Company this cause was removed to the United States District Court for the Eastern District of Kentucky, in which court the Beaver Creek Consolidated Coal Company was made a party defendant. Issues were joined by separate answers of the Gibson Coal & Coke Company and the Beaver Creek Consolidated Coal Company, denying all the material allegations of plaintiff's petition and amendment thereto. The Gibson Coal & Coke Company also pleaded the 5-year statute of limitation and laches of the plaintiffs in failing and neglecting to bring this suit for more than 8 years after the date of the decree confirming the sale, and until the property had largely increased in value and other parties had become interested therein.

Upon the issues so joined, the District Court found for the plaintiffs other than Oliver Webb, and entered a judgment and decree setting aside the order of confirmation and the sale of their interest in the minerals and mining rights, and further ordering and directing that the portion of the purchase price paid by the coal company for the five-sixths interests therein be returned to it, with interest from the date of its receipt, subject, however, to an accounting, upon a royalty basis, for the coal mined therefrom by the defendant coal companies, or either of them.

B. F. Combs, of Prestonsburg, Ky., and Edward C. O'Rear, of Frankfort, Ky. (W. T. Fowler, of Frankfort, Ky., on the brief), for appellants.

Geo. B. Martin, of Catlettsburg, Ky., and A. J. May, of Prestons-burg, Ky. (J. P. Hobson, of Frankfort, Ky., on the brief), for appellees.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge (after stating the facts as above). [1] It appears from the certified copy of the opinion of the Kentucky Court of Appeals in Webb v. Webb's Gdn., 178 Ky. 152, 198 S. W. 736, introduced in evidence upon the trial of this case in the District Court, that the Kentucky Court of Appeals reversed as erroneous the decree of the Floyd circuit court, ordering the sale of the minerals and mining rights belonging to the infant children of A. P. Webb, deceased, in and underlying the 377.40 acres described in the petition as tract No. 776, for the reason that "the provisions attached to the minerals and rights adjudged to be sold are unreasonable, and are calculated to greatly impair the value of the surface of the land for any purpose which the infant or any one to whom he might sell it, could subject it," citing in support of its judgment Hays v. Wicker, 161 Ky. 706, 171 S. W. 447.

It is now insisted, however, that this court should permit the defendant coal companies to release and reconvey to plaintiffs these excessive and unreasonable mining rights in the surface, so as to cure the error in the decree ordering the sale, and permit it to stand as to the minerals and reasonable mining rights in the surface. As the record comes to this court, that judgment and decree was reversed in its entirety by the court of last resort in Kentucky. Before this action was commenced that decree had passed into the "limbo of things that were but are not." It was to all intents and purposes the same as if no such judgment had ever been made or entered by the Floyd circuit court. This court has no power to reinstate or revive that decree, either in whole or in part. The judgment of reversal entered by the Kentucky Court of Appeals is conclusive, not only upon the parties to that appeal, but also upon this court, and the rights of the respective parties to this action must be determined in accordance therewith and in obedience to the statute of Kentucky under favor of which this action is brought.

[2] It is also claimed by the appellants that this action was not brought by the twin sisters Maggie and Mary Webb within 12 months after they had attained the age of 21 years. No such statute of limitation is pleaded by either of these defendants in bar of the right of these plaintiffs to maintain this suit. It is true that the answer of the Gibson Coal & Coke Company does aver that this petition was not filed within 5 years after the making and entering of the decree confirming the sale, and "pleads and relies upon the statute of limitations in such cases made and provided in bar of plaintiffs' right to recover herein"; but "the statute of limitations in such cases made and provided" has no application whatever to the commencement of a suit by infants under section 391 of the Civil Code of Kentucky to reverse, vacate, or modify a judgment of the circuit court within 12 months after they have reached the age of 21 years. Section 391 is a separate and distinct statute of limitation, or rather a statute exempting infants from other statutes of limitations that would bar an action by a person of

full age at the time the judgment or decree was entered, and granting to infants a full 12 months after reaching their majority in which to attack a judgment prejudicial to their interests and secured during their minority.

[3] If, however, the defendants, or either of them, had pleaded this statute of limitation as to infants in bar of this action, there is no evidence in this record that would sustain such an averment. These twin sisters were born January 8, 1896; this action was commenced January 7, 1918. Under the decision of the Court of Appeals of Kentucky, in Erwin v. Benton, 120 Ky. 536, 87 S. W. 291, 9 Ann. Cas. 264, these twin sisters became 21 years of age on the day preceding their twenty-first birthday. The statute provides that they shall have 12 months after that time in which to bring this action. Certainly it would do violence to the language of this statute if this 12 monhs were reckoned from the 6th of January, 1917, for they had not arrived at 21 years of age until the 7th of January of that year, and by the express terms of the statute the time must be reckoned after the time they arrive at the age of 21 years.

The usual rule for the computation of time is to exclude the first day and count the last. Section 681 of the Kentucky Civil Code would seem to declare the same rule in that state. However, since that statute was passed the Kentucky Court of Appeals has decided in several cases that, when the computation is to be made from the act done, the day in which the act is done must be included, but when the computation is to be from the day itself, and not from the act done, then the day in which the act was done must be excluded. Chiles v. Smith's Heirs, 13 B. Mon. (Ky.) 460; Board of Councilmen v. Farmers' Bank, 105 Ky. 811, 49 S. W. 811; Mooar v. Covington City National Bank, 80 Ky. 305.

Arriving at the age of 21 years was not an act done or performed by these infants or by any one else, like the entering of a decree or the serving of a notice, but, on the contrary, was a day or date in their lives, which without action on the part of any one, and by operation of law only, marked their transition from infancy to adult and responsible age. Applying, then, the rule as above stated to the facts in this case, it necessarily follows that the 12 months allowed by this statute for the commencement of this suit must be reckoned after the day or date upon which these infants became 21 years of age.

[4] It is also insisted that, notwithstanding they were infants and unmarried at the time this decree confirming the sale was entered against them, these two plaintiffs cannot maintain this action under the provisions of section 391, because they are now married women. That section in part reads as follows:

"An infant—other than a married woman—may, within twelve months after attaining the age of twenty-one years, show cause against a judgment."

This record conclusively establishes the fact that they did perfect an appeal to the Kentucky Court of Appeals and procure a reversal of the judgment and decree ordering the sale of their property; that court, however, refused to set aside the sale to the Gibson Coal & Coke Company, for the reason that it did not affirmatively appear from the

280 F.—3

record of that case, which was all that was before the Court of Appeals, that the Gibson Coal & Coke Company was not a bona fide purchaser. It is doubtful, therefore, if it is necessary to have recourse to this statute in order to sustain the right of these plaintiffs to bring and maintain this action. However that may be, this section is not subject to the construction contended for by counsel for appellant. It is clear that the statute has reference to a particular status existing at the time the judgment is rendered.

In the case of Eversole v. First Nat. Bank, 136 Ky. 362, 124 S. W. 360, the infant was a married woman at the time she signed the mortgage upon which the suit was brought and was also a married woman at the time the judgment was rendered upon that mortgage. Therefore that case has no application to the facts in this case. Maggie and Mary Webb were infants at the time this judgment, confirming the sale of their lands, was obtained against them. They were not married until perhaps 6 months before they arrived at 21 years of age. The purpose and intent of this statute was to protect the rights of infants, other than married women. Married women were no doubt excluded from the provision of the statute upon the theory that their husbands could and would protect their rights, by preventing the obtaining of unjust judgment, or by appealing therefrom; but if the rights of an infant under this statute cease the moment of her marriage, then her husband would have no opportunity whatever to protect the rights of his wife, and the purpose of the exception would wholly fail. To construe this statute as meaning that the marriage of the infant ipso facto deprives her of its benefit and protection, without affording her a day in court after she arrives at majority, or affording her husband a day in court, after the marriage, for the protection of her rights, would not only do violence to the language of the statute itself, but would ignore the basic reason for the exception therein as to married women.

[5] It is not contended in this court that the Beaver Creek Consolidated Coal Company is an innocent purchaser for value from the Gibson Coal & Coke Company, without knowledge of the defect, if any, in its title, although that issue is presented in the pleadings. It appears from the evidence, however, that the Gibson Coal & Coke Company and the Laclede Coal Company were but the agents or instrumentalities employed by the Beaver Creek Consolidated Coal Company for the purpose of purchasing these minerals and mining rights; that the same individuals in control of the Beaver Creek Consolidated Coal Company controlled and managed the affairs of the Laclede Coal Company and the Gibson Coal & Coke Company, and in fact negotiated this purchase. The Beaver Creek Consolidated Coal Company, its officers and agents, were therefore fully advised of all facts in relation thereto. It also fully appears from the record of the proceedings in the circuit court upon which the title of the Gibson Coal & Coke Company was based, that these plaintiffs were infants at the time that company purchased this property, and also at the time the Beaver Creek Consolidated Coal Company obtained title from the Gibson Coal Company. Therefore the Beaver Creek Consolidated Company took this title with construc-

tive, if not actual, notice of the right of these infants to attack these judgments at any time during their minority or within 12 months thereafter. The District Court also properly held upon the evidence in this case that the Beaver Creek Consolidated Coal Company was not a bona fide purchaser for value without notice in the ordinary course of business, but, on the contrary, acquired the title by a transaction in the nature of a merger or a consolidation, and therefore it took just what interest the Gibson Coal & Coke Company had in these mining rights, and no more.

[6] In support of their claim that the Gibson Coal & Coke Company was not a bona fide purchaser of this property at judicial sale, the plaintiffs offered evidence tending to prove that the agents of the Laclede Coal Company entered into a written contract of sale with their mother before she was appointed their guardian for the purchase of these mineral and mining rights at an agreed price of $10 per acre, and paid to her at that time the sum of $500 upon the purchase price; that shortly thereafter that company procured their mother's appointment as guardian, caused a survey to be made of this 370 acres without cost to her, furnished counsel in its regular employ, and also in the employ of the Gibson Coal & Coke Company, a copy of this survey, together with an enumeration of the mining rights and privileges desired in the surface, which enumeration of rights and privileges was carried into the petition of the guardian, into the decree ordering the sale, and into the deed made in pursuance thereof.

The evidence offered by the plaintiff also tends to prove that counsel for the Laclede Coal Company and the Gibson Coal & Coke Company prepared this petition for the guardian, caused the same to be filed in the circuit court of Floyd county, Ky., and conducted and controlled all the proceedings in that court resulting in the erroneous order of sale and the confirmation thereof; that pending that proceeding the guardian informed the agent of these allied companies that she was dissatisfied with the arrangement; that she had concluded she had made a mistake; that she did not want to sell, and that she thought she would stop it, if she could, and not allow the sale. Thereupon she was told by the agent of these companies that the matter was in court, and she would have to let it be sold; that they held the contract, and would not give it up, and she could not sell to another company, and that she could do nothing with it about selling, and that it would be just tied up in court, and then this agent suggested to her that he might be able to get her some more money; that she then said to him she would not let the suit go ahead for less than $1,000, for she was not satisfied to sell. Thereupon the agent said to her that he "would see the company— Mr. Hite"; that he did see Mr. Hite, and shortly thereafter told her they would give her $1,000 if she would let the suit go ahead; that in pursuance of this arrangement the company paid her $500, and permitted her to keep for herself the first $500 paid on the purchase price, in all $1,000, in addition to the contract price, taking a receipt from her for the amount so paid, which receipt further recites that this $1,000 was paid to her in full of her dower in these premises, although dower had not been assigned, no mines were opened upon this property, and

no reference to dower had been made in the original contract of purchase at $10 per acre for the entire property.

From this evidence it would appear that the infants never had the benefit of the personal judgment of their guardian in reference to the need or advisability of selling this property or the price that should be paid therefor. It is apparent, perhaps, from her evidence, that her judgment might not have been particularly advantageous to these infants; but, regardless of her business ability, they were entitled, at least, to have their guardian exercise a free, unbiased, and uninfluenced judgment in their behalf, wholly apart from any money or other benefits she might receive therefrom, and regardless of the unauthorized and void contract she had made prior to her appointment as guardian.

[7] It is true that a prospective purchaser may approach a guardian with a proposition to buy, and may offer fair and legitimate arguments tending to show the advisability of the guardian making such sale for the benefit of his ward; but it is not true that a bona fide purchaser may enter into a written contract for the sale of the property of infants with the mother of such infant children, before she is appointed guardian, and in furtherance of that contract, cause her to be appointed guardian, prepare and file a petition for her to obtain an order of court authorizing and directing such sale to be made on the terms named in the contract, and then misrepresent the binding force and effect of that contract upon her as guardian to prevent or affect individual judgment on her part after she has been appointed guardian. Neither would it seem to be fair to the infants to permit the prospective purchaser to pay, or the guardian to receive for her own use and benefit, upon any pretense whatever, the sum of $1,000 to influence her in determining the question of permitting the action for the sale of her wards' property to proceed to final judgment and sale, and especially after the guardian had reached the conclusion that the sale ought not to be made and the suit should be dismissed. At all events, the evidence in this case fully demonstrates the fact that this coal company, through its agents and attorneys, were in as full and complete control of this case as if they had been the actual plaintiffs therein, and therefore responsible for the erroneous judgment ordering the sale of this property, which erroneous judgment was the basis of the sale to itself upon the terms named in the original contract with the mother before she was appointed guardian.

It is insisted that the judgment of the Kentucky Court of Appeals in this case, holding that the reversal of the judgment ordering the sale did not ipso facto set aside a sale to a bona fide purchaser, is the law of this case, regardless of what that court may have held at other times in other cases. A decision of this question is unnecessary to the disposition of this case. If, however, it be conceded that the law as declared by the Kentucky Court of Appeals in Webb v. Webb's Guardian is the law of this case, then we need inquire no further as to the law of that state in reference to who is, and who is not, a bona fide purchaser. Upon that subject that court said in that case:

"The adjudicated cases dealing with sales of infants' real property have gone to the extent only of holding that a party to the suit, or an attorney in

the case, or the plaintiff procuring the judgment, or an assignee of such plaintiff, are not bona fide purchasers. We do not, however, mean to hold that only such persons as hold such relations to the record as a plaintiff who procures the judgment, or his assignee, or a party to the suit before the rendition of the judgment, or an attorney in the case, are not bona fide purchasers, as other facts and circumstances may exist or arise which will show that a purchaser is not a bona fide one, other than the relations above mentioned."

Upon this proposition there seems to be no conflict in the Kentucky cases. Cavanaugh v. Wilson, 108 Ky. 759, 57 S. W. 620; Eversole v. First Nat. Bank, 136 Ky. 362, 124 S. W. 360; Turner v. Hamlin, 152 Ky. 469, 153 S. W. 778; District of Clifton v. Pfirman (Ky.) 110 S. W. 406; Turner v. City of Middlesboro (Ky.) 117 S. W. 422.

[8] It is the claim of counsel for appellants that these cases are not in point; that in District of Clifton v. Pfirman, supra, the infants did not enter their appearance and were not served in the first suit, and the doctrine announced by the court in that case was merely obiter. Nevertheless this was cited and approved by the Kentucky Court of Appeals in subsequent cases as dispositive of this question in that state, and therefore must be accepted by this court as final, even though the same doctrine declared in Webb v. Webb's Guardian is not to be accepted as the law of this particular case.

[9] It is further insisted on behalf of the appellant that the District Court erred in setting aside this sale and the decree confirming the same, for the reason that it did not find the Gibson Coal & Coke Company, or the guardian, or either of them, guilty of any fraud or fraudulent collusion in procuring the sale to be made. The question whether the Gibson Coal & Coke Company was or was not a bona fide purchaser does not necessarily depend upon whether it or the guardian were guilty of any actual fraud whatever. A party to a suit, an attorney in the case, or a plaintiff procuring a judgment, or an assignee of such plaintiff is not a bona fide purchaser, regardless of whether they were or were not guilty of any actual fraud. The Kentucky Court of Appeals has also held that:

"Other facts and circumstances may exist or arise which show that a purchaser is not a bona fide owner other than the relations above mentioned."

[10] In commenting upon this statement by the Court of Appeals in Webb v. Webb's Gdn., supra, counsel for appellants say in their brief:

"It is submitted, it was meant one who acts in an honest belief, who is ignorant in fact of the error afterwards developed, who pays full market value, and who is innocent of fraud in the matter."

This statement of counsel would seem to be a fair interpretation and construction of the language used by the Kentucky Court of Appeals in Webb v. Webb's Guardian, and this court does not hesitate to accept it as such. Certainly, under the facts in this case, the individual or company who is in the absolute control of the guardian's case, to the practical exclusion of the guardian, who is responsible for the preparation of the petition, the erroneous judgment ordering the sale, and the decree confirming the sale, cannot be any less ignorant "of the error afterwards developed" than a party to the suit, or even the plaintiff in

that action. Under this state of facts, the coal company would be, regardless of the question of fraud, an "officious intermeddler, who had by its voluntary officiousness * * * brought about the erroneous judgment." Schmidt v. L. C. & L. Ry., 99 Ky. 143, 35 S. W. 135.

It is therefore unnecessary to determine whether the acts and conduct of the Laclede Coal Company or the Gibson Coal & Coke Company constituted actual fraud in the procuring of this judgment, or whether these companies and the guardian were guilty of fraudulent collusion in procuring the sale and the order confirming the same. They were to all intents and purposes the moving force and effective cause which produced the erroneous judgment ordering the sale of the infants' land, and therefore just as responsible for the results as if they had appeared of record as parties plaintiff in that suit.

For the reasons above stated, the judgment of the District Court is affirmed.