RENDERED: JUNE 27, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1446-MR

MEREDITH L. LAWRENCE AND
CUT-N-SHOOT, LLC                                              APPELLANTS


APPEAL FROM GALLATIN CIRCUIT COURT
v.        HONORABLE JAMES R. SCHRAND, JUDGE
ACTION NO. 14-CI-00055


BINGHAM, GREENEBAUM, DOLL,
LLP                                                          APPELLEE

AND

NO. 2024-CA-0572-MR


MEREDITH L. LAWRENCE AND
CUT-N-SHOOT, LLC                                              APPELLANTS


APPEAL FROM GALLATIN CIRCUIT COURT
v.        HONORABLE JAMES R. SCHRAND, JUDGE
ACTION NO. 14-CI-00055

BINGHAM, GREENEBAUM, DOLL,
LLP                                                                                  APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  EASTON, L. JONES, AND McNEILL, JUDGES.

JONES, L., JUDGE:  In Appeal No. 2023-CA-1446-MR, Meredith L. Lawrence

and his limited liability company, Cut-n-Shoot, LLC (collectively "Lawrence")

appeal two orders of the Gallatin Circuit Court stemming from this Court's

mandate to enforce the mortgage held by Appellee, Bingham, Greenebaum, Doll,

LLC (Bingham) on one of Lawrence's properties:  (1) a November 14, 2023

judgment and order of sale of the property in question; and (2) a November 21,

2023 order denying Lawrence's request for an accounting, discovery, evidentiary

hearing and jury trial regarding the amounts of Bingham's monetary awards set

forth in the November 14, 2023 judgment.[1,2]  In Appeal No. 2024-CA-0572-MR,

Lawrence appeals five additional orders of the circuit court, entered from March

---

[1] *See* Notice of Appeal, Record at 5075.  The circuit court's November 21, 2023 order was made final and appealable on December 4, 2023, by virtue of the circuit court's order denying, on that date, Lawrence's Kentucky Rule of Civil Procedure (CR) 59.05 motion to alter, amend, or vacate.

[2] Despite listing the circuit court's November 21, 2023 order as a subject of review in his notice of appeal relating to No. 2023-CA-1446-MR, Lawrence does not reference that order in his brief in No. 2023-CA-1446-MR, or make any arguments in that brief regarding the circuit court's denial of his requests for an accounting, discovery, evidentiary hearing, or a jury trial.

through May of 2024, related to the judicial sale proceedings. We affirm with respect to both appeals.

## I. APPEAL NO. 2023-CA-1446-MR

### A. Factual and procedural background

Litigation between Bingham and Lawrence has reached the Kentucky Supreme Court multiple times. We turn to the most relevant Supreme Court opinion for a summary of the facts applicable in this matter:

> In 2008, Lawrence retained Bingham attorney J. Richard Kiefer to defend him against federal tax-evasion charges. At some point in the representation, the parties agreed to revise their original fee agreement because Lawrence had fallen behind in his payments. The new agreement stated that Lawrence would pay a flat fee of no less than $450,000 the principal not to exceed $650,000. Lawrence agreed to secure his payment with a mortgage on real estate he owned, and he signed a promissory note evidencing his debt.
>
> Lawrence was convicted of three counts of filing false tax returns. He then sued Kiefer and Bingham, among others, in Kenton Circuit Court for legal malpractice. Because Lawrence had not paid for a portion of the legal services provided to him, Bingham filed a counterclaim to recover its fee; specifically, Bingham sued for enforcement of the promissory note. The Kenton Circuit Court dismissed Lawrence's malpractice claim and granted default judgment to Bingham on its counterclaim. [The Kentucky Supreme Court] upheld the judgment. [*See Bingham Greenebaum Doll, LLP v. Lawrence*, 567 S.W.3d 127, 131 (Ky. 2018) (*Lawrence I*)].

Simultaneously occurring with the Kenton Circuit Court case, Bingham sued Lawrence in Gallatin Circuit Court to foreclose on the property Lawrence agreed to mortgage as security on his debt for Bingham's services [(the "Marathon Property")]. Gallatin County was the chosen venue for this action because the [Marathon Property] was situated in that county. Lawrence counterclaimed for legal malpractice.

Also occurring simultaneously with the above two cases was a collateral attack on his conviction that Lawrence filed in federal court based, in part, on a claim of ineffective assistance of counsel. The federal court ruled against Lawrence on his ineffective-assistance-of-counsel claim and issued its final order before the resolution of the Kenton and Gallatin cases.

In the Gallatin Circuit Court foreclosure action, Bingham moved for summary judgment, which the trial court granted. Then, upon Bingham's motion, the trial court entered an order of sale. After several further procedural steps, the [Marathon Property] was sold, and the sale was confirmed by the trial court on May 30, 2018.

*Lawrence v. Bingham Greenebaum Doll, L.L.P.*, 599 S.W.3d 813, 819-20 (Ky. 2019) (*Lawrence III*) (footnotes omitted).

Lawrence appealed the Gallatin Circuit Court's order confirming the sale, which was eventually transferred to the Kentucky Supreme Court. Following briefing, the Supreme Court vacated the summary judgment and remanded the case to the Gallatin Circuit Court to hear evidence regarding Bingham's compliance

with SCR[3] 3.130(1.8)(a) (Rule 1.8(a)). *Lawrence III*, 599 S.W.3d at 829. In its opinion, the Supreme Court said the following: "The only specific argument Lawrence makes . . . that has possible merit and that is not barred by claim or issue preclusion is whether Kiefer violated [Rule 1.8(a)] by taking a possessory interest in Lawrence's property and by taking a property interest, the value of which exceeded the fees owed." *Id*. at 827. The Court further stated:

> We find no evidence in the record to resolve the issue of whether the "transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client[.]" Nor is there anything in the record resolving the issue of whether Lawrence was "advised in writing of the desirability of seeking and [was] given a reasonable opportunity to seek the advice of independent legal counsel on the transaction." . . . These are issues that must be resolved by the trial court before summary judgment can be granted.

*Id*. at 828-29.

On remand, the circuit court held an evidentiary hearing regarding the Rule 1.8(a) issues raised by the Supreme Court. Kiefer, Lawrence, and their respective experts testified. In its April 24, 2020 order, the circuit court acknowledged the Supreme Court's recent opinion and the prior findings made by the Supreme Court. As for the remaining Rule 1.8(a) questions, the circuit court found that (1) the transaction and terms were fair and reasonable to Lawrence per Rule 1.8(a)(1); (2) Kiefer had advised Lawrence in writing of the desirability of

---

[3] Kentucky Supreme Court Rule.

seeking the advice of independent legal counsel on the transaction per Rule 1.8(a)(2); and (3) it could not make a summary judgment decision as to whether Lawrence was given a reasonable opportunity to seek the advice of independent legal counsel per Rule 1.8(a)(2). For this last question, the circuit court reasoned that "negotiations" were ongoing immediately prior to the pending June 2012 trial. The circuit court also found that Bingham took a security interest in an amount greater than the legal fees and expenses owed. The court based its holding on language in the promissory note that accounted for the possibility that Lawrence could owe up to $650,000 in fees if the trial was continued for four months or more and language in the mortgage referencing that the highest aggregate amount which the mortgage could secure was $1 million.

With these holdings, the circuit court denied Bingham summary judgment, vacated the prior orders regarding the sale and confirmation of sale of the Marathon Property, and ordered the Special Master Commissioner to deed the Marathon Property back to Lawrence. The circuit court also made its order final and appealable. The parties subsequently appealed to this Court. *See Bingham Greenebaum Doll, L.L.P. v. Lawrence*, Appeal Nos. 2020-CA-1131-MR, 2020-CA-1217-MR, and 2021-CA-0320-MR, 2022 WL 4587681 (Ky. App. Sep. 30, 2022), *disc. review denied* (Aug. 16, 2023) (unpublished) (*Lawrence VI*). Upon review, we reversed and remanded. Specifically, we reversed the circuit court's

finding that Lawrence had not been given a reasonable opportunity to consult with independent legal counsel;[4] we reversed its finding that Bingham had taken a security interest in an amount greater than the legal fees and expenses owed;[5] and because we accordingly "conclude[d] that the parties' arrangement met the requirements of Rule 1.8(a)," we "remand[ed] to the circuit court for the enforcement of the mortgage on the Marathon Property." *Id*. at *6 and *8.

Following our remand in *Lawrence VI*, Lawrence once again opposed enforcement of Bingham's mortgage against the Marathon property. But, citing our mandate to enforce the mortgage, the circuit court rejected his arguments, and entered an *in rem* judgment in favor of Bingham along with an order of sale regarding the Marathon property. Regarding the amount of the judgment, the circuit court's November 14, 2023 order to that effect determined it consisted of:

> a. The principal amount of $472,504.86; and

> b. Accrued interest through September 20, 2023, in the amount of $424,399.94 with a per diem of $103.56, along with interest thereafter at the rate of 8% until the date of judgment; and

> c. Plaintiff's costs of this foreclosure action, including the sum of $441,640.00 for Plaintiff's attorney's fees and $66,024.48 for Plaintiff's costs, plus any allowable sums, including additional attorney's fees and costs, Plaintiff

---

[4] *See Lawrence VI*, 2022 WL 4587681, at *5.

[5] *Id*.

may incur or expend from October 1, 2023[,] to the date
of satisfaction of its judgment; and

d. Post-judgment interest on all of the foregoing amounts
at 8% from the date of judgment until paid.

Additionally, the November 14, 2023 order provided that Bingham was entitled to all of the rent monies generated from the Marathon property that were being held in escrow.

Lawrence subsequently moved for an accounting and evidentiary hearing regarding the attorney's fees and interest amounts awarded to Bingham. The circuit court entered an order denying his motion on November 21, 2023. This appeal followed.

## B. Standard of review

On remand, a trial court must strictly follow the mandate given by an appellate court in that case. *Buckley v. Wilson*, 177 S.W.3d 778, 781 (Ky. 2005). In a subsequent appeal following a retrial after remand, this Court's role is limited to whether the trial court properly construed and applied the mandate. *Inman v. Inman*, 648 S.W.2d 847, 849 (Ky. 1982). An appellate court's review of whether a trial court properly followed an appellate court's mandate is *de novo*. *See Univ. Med. Ctr., Inc. v. Beglin*, 432 S.W.3d 175, 178 (Ky. App. 2014).

## C. Analysis

### 1. Lawrence's "voidness" argument

On appeal, Lawrence makes something akin to a "voidness" argument regarding why, in his view, the circuit court's November 14, 2023 order enforcing Bingham's mortgage on the Marathon property was erroneous. He contends that when this Court reversed the circuit court's April 24, 2020 order and remanded "for the enforcement of the mortgage on the Marathon Property" in *Lawrence VI,* we were actually directing the circuit court, on remand, to engage in a futile exercise. In the words of his brief:

> The appellate court knew the mortgage had been exhausted by the 2018 foreclosure and order of sale that were final orders. Enforcement of an exhausted mortgage can only mean to apply the mortgage terms, such as "This mortgage does not survive satisfaction of the note" and Kentucky law controls the construction of the mortgage.

Lawrence Brief at 28.

Stated otherwise, Lawrence believes the circuit court could only have "enforced" the "mortgage on the Marathon property" by declaring: (1) the mortgage had *already* been enforced in conjunction with a final and irrevocable conveyance of that property that had resulted from the 2018 foreclosure sale; (2) the mortgage could not be enforced *again*; and that (3) the mortgage was accordingly, at the time the circuit court entered its November 14, 2023 order, an

unenforceable legal nullity. That said, Lawrence's argument is based upon nothing more than his gross misapprehensions of the law and events that have transpired in this litigation over the past several years. We will summarize his logic to the extent it is decipherable from his brief, along with its flaws.

The first step of his logic involves our Supreme Court's mandate set forth in *Lawrence III*. The Court in that matter (1) vacated the circuit court's February 20, 2018 summary judgment in favor of Bingham; and (2) remanded for "further proceedings consistent with this opinion." 599 S.W.3d at 829. Lawrence believes that because the *Lawrence III* Court vacated the summary judgment but did not specify that it was also vacating the circuit court's accompanying order of sale or the circuit court's May 30, 2018 order confirming it, the *Lawrence III* Court meant to indicate, and so held, that the sale of the Marathon property was irrevocably valid and could not be undone by a subsequent court order – notwithstanding that it was founded upon an order that the *Lawrence III* Court had vacated. Building from that premise, Lawrence adds: "The only way Bingham could have be [sic] divested of title was by their own deed of reconveyance which was made in 2021." Lawrence Brief at 6-7.

Lawrence is incorrect. First, nothing in *Lawrence III* supports that interpretation. Second, it conflicts with the *Lawrence III* Court's actual mandate. When a court of review vacates a judgment, that disposition carries with it an

-10-

implicit mandate to the trial court: restore each party to the "status quo," *i.e.*, as nearly as possible to the positions they occupied prior to the entry of the judgment. *See Turner v. Ewald*, 295 Ky. 764, 174 S.W.2d 431, 436-37 (Ky. 1943). A trial court's determination of how best to do so is an equitable *proceeding* involving restitution that is *consistent* with that disposition. And, in the context of a vacated judgment of foreclosure, there is more than one way to achieve the status quo. First, the foreclosure sale may indeed be permitted to stand – in which case the foreclosed-upon party would (unless and until the judgment of foreclosure is later reinstated) be entitled to the proceeds of the sale, plus interest. *See Hess v. Deppen*, 125 Ky. 424, 101 S.W. 362, 363 (1907).

Alternatively, where (as here) the mortgagee or its privy is the purchaser and has retained ownership of the property, the sale may be voided (*e.g.*, "set aside" or "rescinded") – in which case the law treats the sale as though it *never occurred*.[6] The foreclosed-upon party would then be entitled to the return of the

---

[6] To elaborate further, the general rule is that the right of a purchaser to receive property acquired at a judicial sale cannot be affected by the reversal or vacating of an order ratifying the sale where, as happened below in this matter, a supersedeas bond was never filed. *See Elk Horn Coal Corp. v. Cheyenne Resources, Inc.*, 163 S.W. 3d 408, 419-20 (Ky. 2005), *overruled on other grounds by Calloway County Sheriff's Department v. Woodall*, 607 S.W.3d 557 (Ky. 2020) (explaining the consequences of failing to post a supersedeas bond). However, this general rule does not apply when the purchaser is the mortgagee or the mortgagee's privy, because the mortgagee or its privy are on notice of and do not free themselves from the underlying dispute to which the mortgagee is a party. *See Peoples Bldg. & Loan Ass'n v. Wagner*, 297 Ky. 558, 180 S.W.2d 295, 296 (1944) (citations omitted) ("When a void judgment is set aside, the law raises an obligation against the party to the record who has received the benefit thereof, or one in privity with him, to make restitution to the other party of all property received under it."). *Cavanaugh v. Willson*, 108 Ky. 759, 57 S.W. 620, 623 (Ky. 1900) (citations omitted) (explaining

-11-

property, and "[t]he purchaser should be charged with waste or rents, and credited by necessary outlays or enhancement by improvements, as in other cases where a contract of sale is rescinded between vendor and vendee on account of a mutual mistake." *Id*. at 363-64. Conversely, because the sale effectively *never occurred*, the sale does not "exhaust" or otherwise affect the lien or mortgage that prompted it. Merely vacating a judgment foreclosing upon a lien or mortgage, or vacating a sale based upon a lien or mortgage, does not adjudicate the merits of the underlying dispute; it has no effect upon the validity of the lien or mortgage in

foreclosing party's attorney who purchased the property at issue was not a stranger to the proceedings, and could thus be required to return the property to the foreclosed-upon party, because "an attorney in a case is privy to his client, and as much bound, if not, indeed, more, to take notice of all the errors, as the client; and when he becomes a purchaser at a judicial sale, made for the benefit of the client, every error and equity which would avail against him [the client] had he been the purchaser, growing out of the errors and irregularities of the record, would affect the attorney's purchase."); *see also Leisure Campground and Country Club Ltd. Partnership v. Leisure Estates*, 372 A.2d 595, 598 (Md. 1977) ("Since counsel, during the hearing on the exceptions to this sale, stipulated that the persons who constitute the corporation which purchased at the foreclosure sale are the same persons who constitute Leisure Estates, the mortgagee, and the intervening rights of innocent nonparty purchasers are therefore not involved, the filing of a supersedeas bond was not required to avoid mootness in this case.").

Tangentially, Lawrence unsuccessfully argued (several years and several appealable orders ago) – and now argues *again* in No. 2024-CA-0572-MR (*see* Lawrence Brief, No. 2024-CA-0572-MR, at 8) that the Marathon property could not be deeded back to him as restitution – and that the circuit court erred by doing so in its April 24, 2020 order – because Bingham had assigned its high bid at the 2018 auction of the Marathon property to a "non-party," and because the "non-party" assignee who purchased the property – BGD Holdings, LLC – *might* argue it was not Bingham's privy, but was rather a stranger to the litigation, and that the "general rule" discussed above therefore *might* apply. *See* "Defendant's ordered reply to plaintiff's memorandum in opposition to defendants motion for a hearing on and clarification of October 2, 2020 order" (Record at 2722). But, this argument was rejected and remains meritless because BGD Holdings, LLC – a wholly owned subsidiary of Bingham – *never* argued it was a stranger to the litigation, and instead submitted itself to the circuit court's jurisdiction for purposes of reinvesting Lawrence with title to the Marathon property. *See* Record at 2099 (BGD Holdings, LLC's June 6, 2020 "notice of submission to the court's jurisdiction for purposes of issuing master commissioner's deed").

question; and the lien or mortgage therefore continues to encumber the property pending the ultimate result of the litigation. *See Wagner*, 180 S.W.2d at 296-97 (holding that property must be restored to the debtor even if setting aside the judgment does not terminate the litigation because to hold otherwise would be to prejudge the case).

Here, following remand from *Lawrence III*, and through its April 24, 2020 order, the circuit court chose this latter option – a point we will revisit. For now, it is enough to emphasize that because the circuit court returned the parties to the status quo by voiding the sale of the Marathon property, Bingham's mortgage on the Marathon property was not "exhausted" by virtue of the 2018 judicial sale. It *remained*.

The second step in Lawrence's logic involves a June 29, 2020 order from this Court which dismissed five of his other appeals that had been pending when our Supreme Court rendered *Lawrence III* – five other appeals which *also* stemmed from the 2018 judicial sale of the Marathon property.[7] Lawrence believes this order either verified that the Supreme Court's decision in *Lawrence III* irrevocably validated the circuit court's February 20, 2018 order of sale and May 30, 2018 order confirming that sale, or had the operative effect of dismissing

---

[7] Our June 29, 2020 order dismissed Appeal Nos. 2017-CA-0932-MR, 2017-CA-1603-MR, 2018-CA-0011-MR, 2019-CA-0219-MR, and 2019-CA-0742-MR.

all of Bingham's claims regarding the enforcement of its mortgage, and that the "law of the case" doctrine[8] therefore mandates the conclusion that Bingham's mortgage was, as he believes, effectively enforced and exhausted in 2018.

Lawrence is incorrect. Our June 29, 2020 order provided as follows:

> Each of the above-styled appeals arises from a foreclosure action in the Gallatin Circuit Court resulting in the judicial sale of real property owned by Appellant Meredith L. Lawrence. The Kentucky Supreme Court granted transfer of a related appeal, Case No. 2017-CA-000933-MR, which arose from the same Gallatin Circuit Court action. On December 19, 2019, in Case No. 2018-SC-000344, the Kentucky Supreme Court vacated the summary judgment entered in favor of Appellee and remanded to the circuit court for further proceedings.
>
> This Court ordered Appellants to show cause why the above-styled appeals should not be dismissed as moot in light of the Kentucky Supreme Court's December 19, 2019 opinion. Subsequently, the trial court entered an order on remand [*i.e.*, the above-referenced April 24, 2020 order] vacating the orders of sale and directing the master commissioner to deliver a deed to Lawrence.

---

[8] "The law-of-the-case doctrine describes a principle which requires obedience to appellate court decisions in all subsequent stages of the litigation." *Buckley v. Wilson*, 177 S.W.3d 778, 781 (Ky. 2005) (footnote omitted). It provides for finality, and it is designed (1) to guard against the endless reopening of already decided questions, and (2) to prevent the drain on judicial resources that would result if previous decisions were routinely subject to reconsideration. *See Brown v. Commonwealth*, 313 S.W.3d 577, 610 (Ky. 2010); *Wright v. Carroll*, 452 S.W.3d 127, 130 (Ky. 2014). The doctrine also is considered an "iron rule" that applies "however erroneous the [appellate] opinion or decision may have been." *University Med. Ctr., Inc. v. Beglin*, 432 S.W.3d 175, 178 (Ky. App. 2014) (citation omitted). It encompasses "all errors lurking in the record on the first appeal which might have been, but were not expressly, relied upon as error." *Sowders v. Coleman*, 223 Ky. 633, 4 S.W.2d 731 (1928). Appellate courts, therefore, are to "hold fast to the law-of-the case doctrine in the interest of maintaining the integrity of prior appellate rulings." *Ragland v. Estate of DiGiuro*, 352 S.W.3d 908, 915 (Ky. App. 2010).

> Having reviewed the record, and being otherwise sufficiently advised; IT IS HEREBY ORDERED that the above-styled appeals shall be, and hereby are, DISMISSED AS MOOT. *Morgan v. Getter*, 441 S.W.3d 94 (Ky. 2014).

June 29, 2020 Order at 3. In short, we dismissed *Lawrence's appeals*, not *Bingham's claims*; and we did so because we have no jurisdiction to render an advisory opinion regarding vacated orders that no longer have legal effect.

The third and final step in Lawrence's logic involves the circuit court's aforementioned April 24, 2020 order, and a deed it directed the master commissioner to prepare (*i.e.*, the "deed of reconveyance which was made in 2021" referenced earlier in this opinion). In sum, the circuit court held, following an evidentiary hearing on remand from *Lawrence III*, that Rule 1.8(a) precluded Bingham from receiving a summary judgment enforcing Bingham's mortgage on the Marathon property. Accordingly, the circuit court's relevant directives set forth in its April 24, 2020 order were as follows:

> 2. That the Order of Sale and Referral to Special Master Commissioner, December 18, 2017 and February 20, 2018, the sale of the Marathon station on April 5, 2018, and the May 30, 2018 Order confirming the sale are VACATED;

> 3. That the Order of Sale for the fixtures and Referral to Special Master Commissioner, February 22, 2019, and the sale of the fixtures on June 20, 2019 are VACATED;

> 4. That the Master Commissioner shall prepare a deed for the subject property, the Marathon property, back to Defendant[.]

*See* April 24, 2020 order (Record at 2060).

In conformity with the circuit court's order, the master commissioner then prepared, executed (on August 28, 2020), and recorded (on March 15, 2021) – on behalf of all interested parties to this litigation – a deed that (1) referenced the circuit court's April 24, 2020 order and set forth the part of it quoted above; (2) recited that the master commissioner, on behalf of all parties to the litigation, was conveying the Marathon property to Lawrence "in fee simple and to his survivors, heirs and assigns forever;" but (3) qualified the conveyance by stating the master commissioner:

> [C]onveys all of the right, title and interest, legal and equitable, of the Grantor's in and to said property, and warrants the title thereto *so far as he is authorized by the Judgment, orders, and proceedings in said cause, and no further*; but, he does not bind himself personally by anything contained herein, in any event, whatever.[9,10]

*See* August 28, 2020 Deed (Record at 5171-5172) (emphasis added).

---

[9] Lawrence represents that the August 28, 2020 deed conveyed to him, in his words and emphasis, "all Bingham's ***'interests, title and rights with warranty in fee simple to Lawrene*** [sic] ***and his heirs forever***.'" Lawrence Brief at 7. To be clear, that quoted statement does not appear in the deed.

[10] Similarly, the August 2018 deed BGD Holdings, LLC, received from the 2018 judicial sale referenced the circuit court's February 20, 2018 judgment and order of sale; and it likewise granted BGD Holdings, LLC, "all of the right, title and interest, legal and equitable, of Grantors in and to the Property, and warrant[ed] the title thereto so far as he is authorized by the Judgment, orders and proceedings in said cause, and no further[.]" *See* Record at 3010.

Relative to this order and deed, Lawrence believes that because Bingham's mortgage had already been effectively "exhausted" due to the 2018 judicial sale, the circuit court's April 24, 2020 order – taken in conjunction with what he represents was the master commissioner's "warranty of title" set forth in the August 28, 2020 deed he received to the Marathon property – effectively transferred title to the Marathon property back to him *free and clear of Bingham's mortgage*, and consequently mooted any further proceedings to enforce Bingham's mortgage.

But as we have already stated, the 2018 judicial sale did *not* "exhaust" or otherwise invalidate Bingham's mortgage because that sale was *voided*. Furthermore, all that the master commissioner "warranted" to Lawrence regarding the title of the Marathon property was, by the clear terms of the August 28, 2020 deed, that *whatever* title Lawrence received to that property was subject to the ultimate outcome of this ongoing litigation – litigation that has, from its inception, concerned the enforceability of Bingham's mortgage on the Marathon property.

That is the discernable logic underpinning Lawrence's "voidness" or "exhaustion" argument. It is meritless. Furthermore, the law of the case precludes the entirety of this argument and any of its nuances Lawrence might believe we have missed. By rejecting his logic here – and by explaining that Bingham's mortgage remains enforceable, attached to the Marathon property, and that it has

-17-

not been "exhausted" as Lawrence claims – we are effectively repeating what we have told Lawrence *twice* before. *In Cut-n-Shoot, LLC v. Bingham, Greenebaum, Doll, LLP*, No. 2022-CA-0259-MR, 2022 WL 17543025 (Ky. App. Dec. 9, 2022) (*Lawrence VII*),[11] we explained with regard to the circuit court's April 24, 2020 order:

> By ordering both the Marathon Property and the fixtures to be deeded back to Lawrence, along with any of the net benefits Bingham received from the Marathon Property during the time it collected the rent and paid the expenses, the Circuit Court followed the proper principles of restitution. . . . Thus, the Circuit Court applied Kentucky law regarding restitution and equitably placed Lawrence back into the position he had before the summary judgment decision in 2017 (and prior to the Marathon Property's sale in 2018) when he owned the Marathon Property.

*Id*. at *3. Similarly, in *Lawrence VI*,[12] we explained:

> [N]o court has ever determined that Bingham's mortgage on the Marathon Property was invalid. All that the Supreme Court in *Lawrence III* required the circuit court to address regarding the mortgage was to conduct further proceedings regarding the Rule 1.8(a) analysis. 599 S.W.3d at 828-29. Moreover, the circuit court's determination that Bingham was not entitled to summary judgment on its foreclosure claim did not equate to a final judgment regarding the mortgage's validity.

---

[11] On p. 5 of the appellate brief he submitted in *Lawrence VII*, Lawrence argued, as he does here, that 2018 sale was final and could not be set aside due to estoppel by deed and merger.

[12] On pp. 24-30 of the appellate brief he submitted in *Lawrence VI*, Lawrence argued, as he does here, that the February 2018 sale was final could not be set aside due to estoppel by deed.

-18-

2022 WL 4587681, at *7.

## 2. Lawrence's "partial voidness" arguments

Lawrence asserts that if Bingham's mortgage is enforceable, Bingham's mortgage can at most only justify an award of $472,504.86 (the adjudicated principal of what he owes Bingham under his promissory note) or perhaps less, and cannot justify additional awards of prejudgment interest, post-judgment interest, or attorney's fees. He believes this is so because: (1) the principal of what he owed under the promissory note should have been "capped" at $450,000; (2) the 2018 foreclosure sale of the Marathon property was final and irrevocable, and thus he is owed a "credit" against the unpaid principal for $412,500 (what BGD Holdings, LLC purchased the Marathon property for at the 2018 foreclosure sale) plus interest; (3) he sought Chapter 11 bankruptcy protection in or about 2015, and "it was understood" that "interest on the fee debt ceased on or about June 3, 2015"[13]; and (4) Bingham's mortgage would, in his view, violate Rule 1.8(a) or "the law of the case" by permitting interest, attorney's fees, or anything else in excess of $472,504.86.

These assertions are either meritless or precluded. Regarding his first point, per *Bingham Greenebaum Doll, LLP v. Lawrence*, 567 S.W.3d 127 (Ky. 2018) (*Lawrence I*), the principal of what Lawrence owed under the promissory

---

[13] Lawrence Brief at 2.

note is $472,504.86; that is *res judicata*. Regarding his second point, the 2018 foreclosure sale of the marathon property was *voided*. As for how "it was understood" that "interest on the fee debt ceased on or about June 3, 2015," – his third point, which is essentially an "interest abatement" argument – Lawrence did not raise and preserve this argument below. Furthermore, his only citation relative to this argument is to an order of the bankruptcy court, filed of record, *dismissing* his Chapter 11 bankruptcy proceeding without any discharge on that date. His dismissed bankruptcy proceedings have no bearing upon what Bingham is entitled to receive pursuant to its mortgage.[14]

Lastly, we already held in *Lawrence VI* that Bingham's mortgage on the Marathon property did not violate Rule 1.8(a); that is the law of the case; and Lawrence is accordingly barred from recontesting that point, regardless of his additional reasons. The law of the case doctrine also does not preclude attorney's fees stemming from the mortgage; and that aside, Lawrence has already had ample opportunity to litigate his claimed defenses and arguments concerning the enforcement of the mortgage in prior appeals. He is not entitled to another opportunity.

---

[14] Lawrence initiated Chapter 11 bankruptcy proceedings in the United States Bankruptcy Court for the Eastern District of Kentucky, Covington Division (*In re: Lawrence*, Case No. 15-20344). His petition was dismissed on June 3, 2015. *See* Record at 4917-18. The dismissal of a bankruptcy petition has the effect of restoring parties to their rights and positions as they existed prior to the filing of the bankruptcy case. *See generally* 11 United States Code (U.S.C.) § 349(b).

### 3. Lawrence's remaining arguments

To the extent another legal argument might be distilled from Lawrence's nebulous brief, it is as follows:

> [T]he January 18, 2024 judicial sale proceedings were and are non-compliant with the AP IV Rules, rendering the Judgment, Order of Sale, the appraisement, the judicial sale, its confirmation and distribution orders non-compliant with the mandatory pre-requisites Ordered by the Kentucky Supreme Court. *This must be presented in yet another appellate brief.*

Lawrence Brief at 21 (emphasis added).

Recall, this appeal is limited to: (1) a November 14, 2023 judgment and order of sale of the Marathon property; and (2) a November 21, 2023 order denying Lawrence's request for an accounting, discovery, evidentiary hearing, and jury trial. Lawrence appears to understand that this appeal does *not* involve the "January 18, 2024 judicial sale proceedings," which came afterward; and that arguments concerning those proceedings "must," in his words, "be presented in yet another appellate brief." Nevertheless, Lawrence then proceeds to devote a substantial portion of his brief toward addressing those proceedings and his disappointment with them. To be clear, those proceedings are *not* before us in this appeal. As such, we cannot and will not address the substantial portion of his brief devoted toward addressing those proceedings.

## C. Conclusion

When we concluded *Lawrence VI* by remanding "for the enforcement of the mortgage on the Marathon Property," our meaning was consistent with the record and the law, and could not have been more plain: (1) Bingham's mortgage was *on* the Marathon property; and (2) the circuit court was mandated to give Bingham's mortgage on the Marathon property full force and effect,[15] not treat it as a legal nullity. That Lawrence still disagrees with that mandate is irrelevant. This has been the law of the case since before he took this appeal; and our narrow mandate to the circuit court in *Lawrence VI* to enforce the mortgage on the Marathon property did not open the floor for Lawrence to make additional arguments in opposition. The circuit court properly followed the mandate of this Court, and Lawrence fails to demonstrate it erred.

## II. APPEAL NO. 2024-CA-0572-MR

In the words of Lawrence's notice of appeal, this appeal involves the following orders that the Gallatin Circuit Court entered in this litigation after it entered the November 2023 orders that were at issue in Appeal No. 2023-CA-1446-MR:

> [The] GALLATIN CIRCUIT COUT'S MARCH 19, 2024 (1.) OMNIBUS ORDER OVERRULING

---

[15] *See* BLACK'S LAW DICTIONARY 549 (7th ed. 1999) (Defining "enforce" as "1. To give force or effect to (a law, etc.); to compel obedience to. 2. Loosely, to compel a person to pay damage for not complying with (a contract).").

DEFENDANT'S OBJECTIONS, EXCEPTIONS AND MOTION TO SET ASIDE THE SALE, THE REPORT AND AMENDED REPORT OF SALE, APPRAISEMENT, AND MOTION TO CONFIRM THE 1/18/2024 SALE, AND TO ENFORCE THE MORTGAGE, THE REMANDS, THE 2021 DEED, KRS[16] 382.030; (2.) THE ORDER CONFIRMING SALE; (3.) THE ORDER(S) FOR DISTRIBUTION; (PER THE CR 59 MOTION'S DENIAL APRIL 18, 2024); and, (4.) the April 18, 2024 ORDER DENYING MOTION TO HOLD COMMISSIONER'S MOTION TO CONFIRM SALE IN ABEYANCE AND ALLOW DUE DILIGENCE ON LETTER OF INTENT TO PURCHASE THE MARATHON COMMERCIAL PROPERTY, and (5.) the MAY 15, 2024 ORDER OF DISTRIBUTION

Nevertheless, Lawrence spends the majority of his brief reasserting the same or substantially the same "void" and "partially void" arguments he posited in No. 2023-CA-1446-MR – now in service of a theory that Bingham, by securing the November 14, 2023 judgment and order of sale, effectuated a "wrongful taking" of his Marathon property and the escrowed rent monies is therefore indebted to him.[17]  We have already rejected those arguments, and he is precluded from presenting them again here in new packaging.  Lawrence also takes issue with the circuit court's November 14, 2023 judgment and order of sale of the Marathon property, the award amounts set forth in that judgment, and the circuit court's November 21, 2023 order denying his request for an accounting, discovery,

---

[16] Kentucky Revised Statute.

[17] Lawrence Brief at 16.

-23-

evidentiary hearing, and jury trial regarding those amounts. But, he is precluded from contesting any aspect of those orders here because they are not subjects of this appeal.[18]

That said, it appears Lawrence presents roughly six arguments that are relevant to the January 18, 2024 judicial sale of the Marathon property, the orders that are subjects of this appeal, and the pertinent issue of whether the appraisal was "irregular, fraudulent, or so erroneous as to be unconscionable."[19] First, he contends that the court-appointed appraisers who assigned a value to the Marathon property for purposes of the January 2024 judicial sale were unqualified. Second, he contends the notice regarding the judicial sale was deficient because it did not state the full amount of Bingham's judgment award, including the amount of interest, costs, and attorney's fees that Bingham had been awarded, but instead merely stated: "AMOUNT OF JUDGMENT: $472,504.86." Third, he contends

---

[18] On pp. 22-27 of his brief, Lawrence also asserts that he should have been granted an interest abatement and an attorney's fee abatement for various periods of time throughout this litigation – due not only to his dismissed Chapter 11 bankruptcy proceedings, but also because BGD Holdings, LLC, had possession of the Marathon property from the 2018 judicial sale until the property was restored to him in 2021, and because some of Bingham's motions for summary judgment in this litigation were unsuccessful. These arguments are not preserved because Lawrence did not present them to the circuit court. "The Court of Appeals is without authority to review issues not raised in or decided by the trial court." *Regional Jail Authority v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989). The only indication Lawrence provides regarding where he "preserved" these arguments are citations to pages 5551 and 5559 of the record, *i.e.*, pages 2 and 10 of a CR 53.06 motion Lawrence filed on July 8, 2024 – a motion that includes no such arguments, which Lawrence filed well *after* the circuit court entered its November 14, 2023 judgment and order of sale, and November 21, 2023 order denying his request for an accounting.

[19] *See Burchett v. Bank Josephine*, 474 S.W.2d 66, 68 (Ky. 1971).

both the November 14, 2023 judgment and order of sale, along with the notice regarding the judicial sale, were deficient because both failed to adequately state the "chain of title" regarding the property's ownership. Fourth, he argues the sale price was deficient. Fifth, he complains that Bingham "took all of the money proceeds from the sale with an appeal pending and before a final determination had been made as to whether they were entitled to the proceeds or if [sic] the amount of money owed by Bingham to Lawrence."[20] Sixth, he argues the distribution of the sales proceeds was irregular because Bingham applied them to its award of attorney's fees "which have no basis in fact or law,"[21] rather than to the adjudicated outstanding principal of his promissory note.

We will address these points in that order. Regarding Lawrence's first argument: on March 15, 2024, the circuit court held an evidentiary hearing with respect to whether the January 18, 2024 sale should be confirmed. Parenthetically, three active bidders participated at the judicial sale, and the Marathon property sold for a high bid of $455,000. This was over two-thirds of the $590,000 value assigned to it by Eric Moore and Donald Sullivan, the two "disinterested, intelligent housekeepers of the county" that had appraised it pursuant to KRS

---

[20] Lawrence Brief at 30.

[21] *Id.*

426.520. At the start of the hearing, the court had the following exchange with Lawrence:

> COURT: I know we've previously had a hearing where [Moore and Sullivan], the court found them appropriate, I guess is the best word, to conduct the appraisal.[22] So that will not be, I've already qualified them, in other words. As far as what happened at this time on the sale, that's where the testimony would be. So, as far as their qualifications, I mean we've had that previous hearing, and I'm not going to have argument on that again. This is more just how they came up with this current amount, and your argument that it was not commercially reasonable.
>
> LAWRENCE: Judge, I don't want to attack their credentials, except that the rules say certain things weren't followed. But that would be for the commissioner to explain, I guess.
>
> COURT: Okay.
>
> LAWRENCE: Um, that the rules were followed or not.

March 15, 2024 hearing at 1:00:35 – 1:01:15.

The "rule" Lawrence believes was not followed is the Administrative Procedures of the Court of Justice, Part IV, Section 5 ("AP IV, § 5"), entitled "General Provisions of Judicial Sales," which provides in relevant part:

> (2) Before any real property is sold under a judgment and order of sale, the appraisal value shall be determined by

---

[22] During its April 27, 2018 evidentiary hearing regarding Lawrence's motion to set aside the April 5, 2018 sale of the Marathon property, the circuit court found Moore and Sullivan qualified for purposes of KRS 425.520. Its findings of fact set forth in its May 30, 2018 order confirming the sale relied upon evidence provided by Moore and Sullivan. *See* Record at 229-33.

> two disinterested persons both of whom are *actively engaged in or have had at least one year of experience in the field of real estate.*  In accordance with KRS 426.520(2) the appraisal shall be in writing, shall be signed by the persons making it, and shall be filed in the court record prior to the sale.

(Emphasis added.)

And, notwithstanding his representation that he did not "want to attack their credentials," Lawrence notes that during the evidentiary hearing, he asked Moore and Sullivan whether they were actively engaged in or had at least one year of experience in the field of real estate, and that both men answered in the negative.  As such, Lawrence argues Moore and Sullivan could not have properly assessed the value to the Marathon property because their credentials were insufficient for purposes of AP IV, § 5, and that the January 18, 2024 sale was therefore void.

We disagree.  The circuit court's factual findings are reviewed for clear error.  *See* CR 52.01.  Findings are not clearly erroneous when supported by substantial evidence.  *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).  Here, substantial evidence supported that both men were, consistently with a reasonable interpretation of AP IV, § 5(2), "actively engaged in or have had at least one year of experience in the field of real estate."  During the evidentiary hearing, Moore testified – and Lawrence did not dispute – that he had regularly functioned as an appointed property appraiser for the Gallatin County Master Commissioner and

had been actively engaged in doing these types of appraisals in that capacity for the past 35 years.[23] Sullivan testified – and Lawrence did not dispute – that he had regularly functioned as an appointed property appraiser for the Gallatin County Master Commissioner and had been actively engaged in doing these types of appraisals in that capacity for the past 10 to 15 years, and that during the prior two years he had owned and actively managed an RV park with thirty-three units.[24] No clear error occurred.

Regarding Lawrence's second contention: Lawrence presents no authority supporting that a notice of judicial sale is required to set forth the amount of the judgment prompting the sale. Rather, KRS 426.700 – which is most relevant to Lawrence's contention – merely requires the notice of sale to state "for what sum of money [the sale of the property] is to be made."[25] Here, to be sure, the notice of sale recited that $472,504.86 was the "judgment amount," rather than the sum of money for which the sale of the property was to be made. But,

---

[23] *See* Video Record (VR) at 1:24:50-1:25:24.

[24] *Id*. at 1:44:50 – 1:46:00.

[25] KRS 426.700 provides:

> Every sale made under an order of court must be public, either for cash or upon reasonable credits to be fixed by the court; and shall be made after such notice of the time, place and terms of sale as the order may direct; and, unless the order direct otherwise, shall be made at the door of the courthouse of the county in which the property, or the greater part thereof, may be situated; and the notice of sale must state for what sum of money it is to be made.

-28-

$472,504.86 was the *only* amount stated in the notice of sale; and by stating that amount, and further indicating the property would be sold to the highest bidder, the notice of sale effectively complied with the "sum of money" requirement of KRS 426.700. Nothing indicates Lawrence was substantially prejudiced by that difference in wording. *See Hurst v. White*, 295 Ky. 123, 174 S.W.2d 3, 4 (1943) (explaining, with respect to perceived errors with notices of sales and judicial sales proceedings, "The policy of the law is to sustain judicial sales unless substantial reasons are shown for setting them aside.").

Regarding Lawrence's third contention: he believes the November 14, 2023 order of sale, as well as the notice regarding the judicial sale, were deficient because they failed to describe the "chain of title" regarding the Marathon property. Both described the Marathon property consistently with the deed Lawrence received to that property on December 13, 1991, and specified that the real property would be "sold as a whole." But, Lawrence believes they should have additionally clarified that while the trade fixtures on the property were separated from the property by and through a 2018 deed, they were later rejoined to the property in 2021.

We disagree. Lawrence is precluded from contesting the November 14, 2023 order of sale. He cites nothing indicating it was required to list the chain

of title regarding the property. KRS 426.560[26] – which is most relevant to Lawrence's contention – does not require the notice of sale to specify the chain of title; it only requires a description of the property to be sold. There is no suggestion that the description of the property set forth in either the order or notice of sale was inaccurate, and nothing more was required. Source deed information is also not part of a property description; it is generally a recording requirement,[27] and master commissioners are excluded from that recording requirement.[28]

Lawrence's fourth contention takes issue with the fact that the Marathon property, for purposes of the judicial sale, was not appraised at $1.169 million. His contention stems from the fact that he filed a "limited appraisal summary report" with the record in April 2018. The report, dated August 7, 2006, appraised the Marathon property at $850,000 (under the "income approach") and $1.169 million (under the "cost approach"). It appears Lawrence believes the circuit court was constrained to accept the $1.169 million valuation – the higher of the two valuations set forth in the report – because, in his words, that valuation was

---

[26] KRS 426.560 provides, "In addition to the notices now required by statute to be posted, all public sales of any kind of property sold under execution, judgment or decree, shall, unless otherwise agreed upon by the parties, be advertised by publication pursuant to KRS Chapter 424. The advertisement shall state the time, place and terms of sale and describe the property to be sold. The newspaper advertisement shall not be necessary where the appraised value of the property to be sold is less than one hundred dollars ($100)."

[27] *See* KRS 382.110(2).

[28] *See* KRS 382.110(8) ("This section does not apply to deeds made by any court commissioner[.]").

"unchallenged" and "unopposed."[29] And, because the circuit court was so constrained, the $455,000 selling price of the Marathon property was therefore deficient.

However, ample evidence was adduced during the March 15, 2024 judicial sale confirmation hearing supporting that the $590,000 valuation which the circuit court ultimately accepted, and the methodology employed by Moore and Sullivan to arrive at that valuation for the Marathon property, were appropriate. Indeed, Lawrence offers no argument to the contrary. Rather, Lawrence simply appears to be arguing that the circuit court was required to accept his evidence because his evidence was, in his view, better.

Lawrence's argument is meritless. The circuit court correctly rejected Lawrence's argument below because weighing the evidence was the circuit court's prerogative, not Lawrence's. *See* CR 52.01. The circuit court correctly explained as much to Lawrence in its March 19, 2024 order, adding "this Court has never accepted the value that Lawrence proposes. The property sold for $455,000, well above the redemption value."[30]

In a somewhat related vein, Lawrence also notes that at the March 15, 2024 hearing, he attempted to introduce into evidence what purported to be a

---

[29] Lawrence Brief at 4 and 14.

[30] *See* March 19, 2024 order (Record at 5391).

"letter of intent" from an individual interested in purchasing the Marathon property from him for $925,000. He argues that this "verified valid and viable" letter of intent should have required the circuit court to grant "a stay or for the high-bid to be received in an amended/corrective sale procedures."[31]

We disagree. The letter of intent Lawrence attempted to submit to the circuit court was dated March 12, 2024 – roughly two months after the judicial sale. Lawrence did not call the alleged sender of the letter of intent to testify, and the circuit court appropriately excluded it from evidence as a hearsay document. Additionally, the letter is not an approximation of value because it contained caveats about inspection of the business records and tax returns of the gas station. In short, it was not a contract for sale, or even an unconditional offer to purchase. Furthermore, nothing prohibited the alleged sender of the Letter of Intent from attending the foreclosure sale and purchasing the Marathon Property.

Regarding his fifth point: the fact that Bingham "took all of the money proceeds from the sale with an appeal pending" is not indicative of error or wrongdoing. It was the foreseeable consequence of Lawrence's failure, following the circuit court's judgment, to execute a supersedeas bond. *See* Kentucky Rule of Appellate Procedure (RAP) 63(A)(1); *see also Dreamers, LLC v. Don's Lumber & Hardware, Inc.*, 366 S.W.3d 381, 384 (Ky. 2011) ("It has long been the law in

---

[31] Lawrence Brief at 30.

Kentucky that 'a party . . . does not need to post a supersedeas bond to take an appeal from a judgment,' though '[t]he failure to post a bond . . . leaves the party who obtained the judgment free to execute on it.'" (quoting *Elk Horn Coal Corp. v. Cheyenne Resources, Inc.*, 163 S.W.3d 408, 419-420 (Ky. 2005)), *overruled on other grounds by Calloway County Sheriff's Dep't v. Woodall*, 607 S.W.3d 557 (Ky. 2020).

Lastly, regarding his sixth point: the terms of Bingham's mortgage agreement with Lawrence entitled it to attorney's fees. Lawrence's opportunity to take issue with the amount of Bingham's attorney's fees and the denial of his request for an accounting regarding those fees was in Appeal No. 2023-CA-1446-MR, not here. Lawrence also cites no authority, and we have found none, supporting that the sales proceeds should have been applied to the adjudicated principal of his promissory note first. In short, we have addressed and rejected the breadth of what Lawrence has presented in this appeal.

**OVERALL CONCLUSION**

We find all of Lawrence's arguments to be unpreserved, unpersuasive, moot, or without merit. Accordingly, we AFFIRM with respect to Appeal No. 2023-CA-1446-MR and likewise AFFIRM with respect to Appeal No. 2024-CA-0572-MR.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Meredith L. Lawrence
Warsaw, Kentucky

BRIEF FOR APPELLEE:

Frank K. Tremper
Aaron A. Vanderlaan
Covington, Kentucky